245 N.J. Super. 113 (1990)
584 A.2d 275
NORTH JERSEY NEWSPAPER CO., PLAINTIFF-RESPONDENT,
v.
PASSAIC COUNTY BOARD OF CHOSEN FREEHOLDERS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 1990.
Decided December 28, 1990.
*114 Before Judges PRESSLER, DEIGHAN and ARNOLD M. STEIN.
*115 Raymond P. Vivino, Passaic County Counsel, argued the cause for appellant (Michael H. Glovin, Assistant County Counsel, on the brief, Raymond P. Vivino on the reply letter brief).
Thomas J. Cafferty argued the cause for respondent (McGimpsey & Cafferty, attorneys, Thomas J. Cafferty, Arlene M. Turinchak and A.F. McGimpsey, Jr., on the brief).
The majority opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiff, the publisher of the Herald and News, a newspaper widely circulated in Passaic County, instituted this action pursuant to N.J.S.A. 47:1A-1 to -4, The Right to Know Law, seeking access to the toll billing records of the office and automobile telephones of the freeholders of Passaic County for March, April and May, 1990. The Passaic County Board of Freeholders appeals from the order entered requiring it to permit inspection and copying of the records. We reverse.
The bills which are the subject of the order are a part of the toll billing records submitted monthly to the county by the telephone company, listing the date, time, length and telephone number of each toll call made from county offices. A certification filed by the county's finance director, Robert G. Calise, asserts that:
The telephone bills paid by the County of Passaic also include telephone numbers set up by the County Prosecutor's Office which are confidential in nature and may or may not include informant's numbers. Since the building's telephone bills are all packaged together, it would be extremely difficult and time consuming to discriminate Freeholders' calls from calls made by the Prosecutor's Office.
At oral argument before us, the monthly telephone bill of Passaic County was described as approximating the size of a full file drawer. Nevertheless, we understand that the bills are already being presented to the freeholders, in some form, in order for them to identify and reimburse the county for personal calls since Calise's certification also states:

*116 The policy with regard to Department Heads and Members of the Board of Freeholders is to the effect that they are given their bills for review and they review same to determine which of the calls are personal in nature. Reimbursement to the County is made for personal calls, however, there is no methodology on the actual bill which strikes out or determines which of the calls are personal.
The first issue before us is whether the detailed bills, not just the total amount of the bills or the total amount charged to each telephone extension, are public records. We agree with the trial judge that they are. N.J.S.A. 47:1A-2 defines public records as "all records which are required by law to be made, maintained or kept on file by any ... political subdivision ..." of the state, such as the county. The Local Fiscal Affairs Law, N.J.S.A. 40A:5-16a, prohibits payment of any money by a county governing body
unless the person claiming or receiving the same shall first present a detailed bill of items or demand, specifying particularly how the bill or demand is made up, with the certification of the party claiming payment that it is correct.
The detailed telephone bill presented to a governing body in support of a claim for payment is clearly encompassed by this provision. As the Supreme Court pointed out in O'Donnell v. Morris County Freeholder Board, 31 N.J. 434, 158 A.2d 1 (1960):
[The statute's] obvious purpose is to provide the county disbursing officer with a detailed statement of the claim presented to him, and to insure an adequate public record of county expenditures.
Id. at 443, 158 A.2d 1.
Nor do we conclude that difficulty in isolating the requested material is by itself grounds for denying access to records encompassed by the law. Presumably there are techniques by which the individual freeholder's calls alone can be segregated. We do not, however, consider the practicality and expense of those techniques because we are satisfied that while the requested records are encompassed by the Right to Know Law, they are nevertheless exempt from inspection and copying thereunder.
The Right to Know Law, by its own terms, subordinates the citizen's right to inspect and copy public records to contrary *117 legislative and executive expressions. N.J.S.A. 47:1A-1, -2. Obviously, the Right to Know Law must also give way to contrary provisions of the state constitution. In our view, the toll billing records of telephone calls made by freeholders from their offices or automobiles are not subject to public inspection because, to some extent, of overriding statutory provision and, even more importantly, because of the overriding privacy interests protected by art. I, par. 7 of the New Jersey Constitution as construed by the New Jersey Supreme Court in State v. Hunt, 91 N.J. 338, 450 A.2d 952 (1982).
The precise question considered by Hunt was whether an individual has a protectible privacy interest in toll billing records as a necessary corollary of the "privacy interest in the home and place of business" which "has continued unabated throughout our judicial history." Id. at 343, 450 A.2d 952. In answering this question affirmatively, the Court started with the proposition that "as the telephone has taken its place in the home and at business, the privacy interest has expanded to include telephone conversations." Ibid. And, departing from the United States Supreme Court's contrary construction of the fourth amendment of the federal constitution in Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), our Supreme Court concluded that "[t]he toll billing record is a part of the privacy package." Hunt, 91 N.J. at 347, 450 A.2d 952.
In reaching this conclusion, the Court relied first on the observation that a telephone conversation between two persons is entitled to the same privacy protection as a conversation between them conducted face to face. Thus the "telephone caller is `entitled to assume that the words he utters into the mouthpiece will not be broadcast to the world.'" Id. at 346, 450 A.2d 952 (quoting Katz v. United States, 389 U.S. 347, 352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967)). Consequently, the Court reasoned, the caller
... is entitled to assume that the numbers he dials in the privacy of his home will be recorded solely for the telephone company's purposes. From the *118 viewpoint of the customer, all the information which he furnishes with respect to a particular call is private. The numbers dialed are private. The call is made from a person's home or office, locations entitled to protection under the Fourth Amendment and Article I, par. 7 of the New Jersey Constitution.
Id. at 347, 88 S.Ct. at 507. The law in this State then is that maintaining the privacy of the toll billing record is a necessary component of maintaining the privacy of the conversation itself.
Clearly, the toll billing records for an office holder's home telephone, whether or not that telephone is also used in performing the duties of the office, are protected by the Hunt rationale. We see no substantial difference in constitutional terms between those records and the detailed bills for the telephone in the public official's office which are paid for out of public funds. In sum, if elected officials are entitled to privacy in face to face conversations they have with other persons in their offices, they are entitled to the same protectible privacy when they use their office telephones to engage in conversation. Moreover, we take it as given that the office itself is not subject to indiscriminate electronic surveillance and that the office telephone is not subject either to such surveillance or to the placement of a pen register. How then, under Hunt, can we justify the breach of the "privacy package" by subjecting the toll billing record to indiscriminate inspection?
Nor do we believe that that presentation by the telephone company of the toll billing records to the county treasurer for payment results in any more of a publication or waiver of privacy than inheres in the fact that the telephone company "in the course of its operations is privy to any information." Id. 91 N.J. at 346, 450 A.2d 952. The county treasurer simply acts as a business agent  the intermediary between the freeholder and the telephone company for the sole purpose of payment of the bill. The public certainly has a right to know the total telephone charges paid by the county each month as well as the total charges paid by the county for each telephone assigned to an officer or employee. But it is not, in our view, entitled to *119 know who the recipient of each toll call was, when the call was made, and how long the conversation lasted.
We are also convinced, as was the Hunt court, that intrusion into the privacy interest one has in his toll billing records could "pose significant dangers to political liberty." Id. at 347, 450 A.2d 952. We believe, moreover, that this risk is particularly acute if we intrude, under the guise of "right to know," into a public official's expectation of privacy in his use of the telephone provided to him and paid for by the public.
Consider the use the office holder makes of the office telephone. There are, to begin with, several categories of calls which are, in our view clearly immune to disclosure, and which would in any event have to be redacted prior to public inspection.[1] First are the personal calls for which the public treasury is reimbursed. These calls, in our view, stand on exactly the same footing as personal calls made from one's home telephone. They are absolutely protected unless a judicial order otherwise provides. Then there are calls entitled to a statutory privilege, for example, calls made by the official to the public entity's attorney and hence encompassed by the attorney-client privilege. See Matter of Grand Jury Subpoenas, 241 N.J. Super. 18, 574 A.2d 449 (App.Div. 1989). And then there are calls relating to those many matters which have been declared to be proper subjects of confidentiality by the Open Public Meetings Act. N.J.S.A. 10:4-6, -12b.
But what of the residue? We believe that the maintenance of our democratic political institutions requires us to presume that the men and women we elect to public office are honest, conscientious, dedicated and diligent people working to advance the public interest in accordance with the public mandate as *120 they understand it. By entering political life they have necessarily forfeited, to a substantial degree, the privacy which others enjoy. See Lehrhaupt v. Flynn, 140 N.J. Super. 250, 262, 356 A.2d 35 (App.Div. 1976), aff'd. o.b., 75 N.J. 459, 383 A.2d 428 (1978). But that sacrifice of privacy is not absolute. The official's right of privacy is entitled to continuing protection to the extent to which it is reasonably expected and relied on and to the extent to which it is reasonably necessary to the proper conduct of governmental affairs. We assume, for example, that part of a freeholder's proper task is to talk to constituents in order to learn their views, their problems, their concerns, and their complaints. We assume that a freeholder reaches out to many sources of information and advice. We assume freeholders talk to each other. We assume freeholders talk to party leaders. We assume that much of this dialogue is conducted by telephone and that the recipient of the call, as well as the freeholder, has a reasonable expectation of the privacy of the conversation.
We do not think it advances the public interest for a person who has spoken to a freeholder on the telephone to be susceptible to inquiries, from the press or otherwise, regarding the nature and substance of the conversation. We do not think a recipient of a telephone call from a freeholder should be subject to any indiscriminate embarrassment or harassment. We can think of little else which would have a more chilling effect on the free and open communication on which elected officials should be able to rely. And we do not think that free and open communication should be relegated to the official's home telephone or walks in the park. We are concerned that as a society we have already become too inured to eavesdropping and surveillance. Of course, if there is good cause to believe that a public official has engaged in abusive or wrongful conduct, there are appropriate avenues of recourse. But indiscriminate inspection of the telephone numbers a public official has dialed, justified only by a public "right to know," is not tenable.
*121 In short, the privacy interests of elected officials in the telephone calls they make while performing their public duties should not be subject to less solicitous protection than is enjoyed by gamblers and drug dealers who use their telephones in the pursuit of their criminal endeavors. It would, in our view, be a sad constitutional result were we to deprive public servants of the protection of Hunt. Application of constitutional doctrine almost inevitably involves the process of delicate balancing of legitimate competing interests. We are constrained to balance in favor of the right to converse in privacy.
The order appealed from is reversed.
ARNOLD M. STEIN, J.A.D., dissenting.
I disagree with the majority opinion's conclusion that a provision in the New Jersey Constitution bars the public from examining the telephone bills of the Passaic County Freeholders.
The federal and state constitutions guarantee "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures ..." U.S. Const. amend. IV, N.J. Const. of 1947 art. I, para. 7. These provisions secure the people against unreasonable governmental intrusion into our homes, workplaces and private conversations. Wolf v. Colorado, 338 U.S. 25, 27, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782, 1785 (1949); State v. Novembrino, 105 N.J. 95, 135, 519 A.2d 820 (1987). The majority's ruling is a topsy-turvy application of these important constitutional safeguards. These guarantees protect the people from government, not government from the people.
The majority reads State v. Hunt, 91 N.J. 338, 450 A.2d 952 (1982) to insulate these telephone bills from public scrutiny. The users of these office and car telephones are said to have a reasonable expectation that the numbers they call will remain private. See also Katz v. United States, 389 U.S. 347, 352, 88 *122 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967) quoted with approval in Hunt, supra, 91 N.J. at 346, 450 A.2d 952.
This case does not involve the warrantless placement of a pen register on the telephone of a suspected bookmaker (Hunt); or the unauthorized attachment of an electronic eavesdropping device to a public telephone booth frequently used by someone transmitting gambling information across state lines (Katz); or the ransacking of a public employee's desk and file cabinets in search of incriminating evidence (O'Connor v. Ortega, 480 U.S. 709, 717, 107 S.Ct. 1492, 1497, 94 L.Ed.2d 714, 723 (1987)). It involves the public's right to inspect and copy a document clearly a public record under the Right to Know Law, N.J.S.A. 47:1A-1 et seq. I cannot conceive that these telephone bills can be considered the repository of secret information  the numbers called and charges incurred  because of the supposed privacy expectation of the person who generated these calls on public time with public equipment and at public expense. The constitutional right of privacy does not extend to the contents of a bill incurred in using public property.
The Freeholders contend that the privacy expectations of the recipients of calls from their office and car telephones also require protection. Disclosure of the names of persons receiving telephone calls from public officials, if an incursion at all, is not one of constitutional dimension. Privacy expectations are established by general social norms. State v. Hempele, 120 N.J. 182, 200, 576 A.2d 793 (1990). There is no expectation of privacy in the contents of a bill submitted to a public body for payment.
I see no basis for the statutory and other exemptions which the majority attempts to carve out of the Right to Know Law. Every citizen has an unqualified right to inspect all documents classified as public records under the Right to Know Law, unless those documents are specifically excepted under the *123 provisions of N.J.S.A. 47:1A-2.[1]Techniscan v. Passaic Valley Water, 113 N.J. 233, 236, 549 A.2d 1249 (1988). I find nothing in the exemption provisions of the Open Public Meetings Act (N.J.S.A. 10:4-6, -12) which exclude telephone bills from public scrutiny. Records of telephone calls made by officials to the public body's attorney are not "communications" under Evid.R. 26(1).
I disagree with the majority's view that personal calls for which the public treasury might eventually be reimbursed by the caller "stand on exactly the same footing as personal calls made from one's home telephone." Op. at 119, 584 A.2d at 279. Private calls made from a public facility while using telephone equipment owned or leased by the public are not afforded the constitutional umbrella of privacy.
I accept the majority's premise that "the men or women we elect to public offices are honest, conscientious, dedicated and diligent people working to advance the public interest in accordance with the public mandate as they understand it." Op. at 119-120, 584 A.2d at 279. The activities of honest, conscientious, dedicated and diligent public servants are subject to public scrutiny and criticism. That is why we have a Right to Know Law.
Finally, I am not the least bit concerned that the exposure to public view of these telephone bills will have a "chilling effect" (Op. at 120, 584 A.2d at 279) upon free and open comment. Elected officials will continue to communicate with each other, with lawyers, with party leaders and with constituents. There will be no interference with the performance of government.
*124 I would affirm the order of the Law Division and stay the order for thirty days to enable the Freeholders to devise a method of segregating their office and car telephone bills from the county telephone bill.
NOTES
[1] We need not address the practical problems of redaction, which are apparently severe. Presumably each freeholder would have to review the entire voluminous monthly bill in order to identify and strike those calls entitled to confidentiality, a time-consuming process which ought not to have to be engaged in at all.
[1] Specifically excluded by N.J.S.A. 47:1A-2 from every citizen's right to inspect and copy public documents are those exceptions

provided [in the Right to Know Law itself] or by any other statute, resolution of either or both houses of the Legislature, executive order of the Governor, rule of Court, any Federal law, regulations or order or by any regulation promulgated under the authority of any statute or executive order of the Governor.