601 A.2d 693

NORTH JERSEY NEWSPAPERS COMPANY, PLAINTIFF–APPELLANT, v. PASSAIC COUNTY BOARD OF CHOSEN FREEHOLDERS, DEFENDANT–RESPONDENT.

Argued October 22, 1991—Decided February 5, 1992.

*Thomas J. Cafferty* argued the cause for appellant (*McGimpsey & Cafferty,* attorneys; *Thomas J. Cafferty, Alexander F. McGimpsey, Jr.,* and *Arlene M. Turinchak,* on the briefs).

*Raymond P. Vivino,* Passaic County Counsel, argued the cause for respondent (*Raymond P. Vivino,* attorney; *Michael H. Glovin,* Assistant County Counsel, on the briefs).

*Eric Neisser* argued the cause for *amicus curiae* American Civil Liberties Union.

*Edward J. Dauber,* Assistant Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Robert J. Del Tufo,* Attorney General, attorney; *Edward J. Dauber* and *William Harla,* Assistant Attorney General, of counsel; *Mark J. Fleming,* Deputy Attorney General, on the briefs).

The opinion of the Court was delivered by

O'HERN, J.

█ This case concerns the public's right of access to telephone toll-billing records under the Right-to-Know Law, *N.J.S.A.* 47:1A–1 to –4. That Act grants citizens unrestricted access to all records of governmental action that are "required by law to be made, maintained or kept on file." Because a public record of the identity of persons called is not required by law to be "made, maintained or kept on file," we hold that the Right-to-Know Law does not provide an unqualified right of access to the telephone toll-billing records of a public body that would disclose the identity of the parties called. Rather, we direct that the telephone toll-billing records of a public body be made available after a showing that the public need for the identity of the parties called outweighs the governmental policies of confidentiality in telephone communications and of executive privilege.

I

On July 11, 1990, plaintiff, North Jersey Newspapers Company (the Newspaper), requested copies of the itemized telephone bills for the Passaic County Board of Chosen Freeholders' office- and car-phone lines for March, April, and May 1990. For

certain types of calls, notably long-distance and car-phone calls, those telephone bills include: the telephone number called; the date, time, and length of the call; and the charge for the call. The Newspaper made that request pursuant to the New Jersey Right-to-Know Law and its common law right of access to such records.

Defendant, Passaic County Board of Chosen Freeholders (the Board), denied the request, reasoning that although the Right-to-Know Law governed the total amounts of the bills, the law did not apply to itemization of the bills. The Board also refused to release the telephone bills under a common-law theory, arguing that the Board's confidentiality interests outweighed the Newspaper's need to review the bills.

The Newspaper sued in Superior Court, seeking access to the requested records. Attached to the Board's answer to the complaint was the certification of the County Finance Director, which outlined the procedure for payment of County telephone bills. The procedure requires placement of the total amount of the bill on an official bill list, along with the check number, the purchase order number, and the vendor's name. The official bill list is then presented for approval at the Freeholders' meeting. Thus, the official record of payment does not contain the disputed information listed in the itemized bill. The certification also specified that each Freeholder, after reviewing the itemized bill, reimburses the County for personal calls.

The trial court granted the relief sought by the Newspaper, concluding that the itemized telephone bills were public records under the Right-to-Know Law and that neither the Governor nor the Legislature had specifically excepted telephone bills from the Right-to-Know Law. The trial court also found that the Newspaper's interest in reviewing the bills outweighed any constitutional or privacy rights of third parties. The trial court noted that the County records included the prosecutor's telephone lines. Because the Newspaper had not requested documents pertaining to those lines, the court allowed the prosecu-

tor's office to review and excise any calls made in connection with its official business.

The Appellate Division reversed, concluding that although the records were public documents under the Right-to-Know Law, the Freeholders' privacy interests were protected by article I, paragraph 7 of the New Jersey Constitution as construed by this Court in *State v. Hunt,* 91 *N.J.* 338, 450 *A.2d* 952 (1982). *North Jersey Newspaper Co. v. Passaic County Bd. of Chosen Freeholders,* 245 *N.J.Super.* 113, 117, 584 *A.2d* 275 (1990). One member dissented, reasoning that the constitutional right of privacy does not extend to the contents of a telephone bill of a person making telephone calls on "public time with public equipment and at public expense." *Id.* at 122, 584 *A.2d* 275. Because of the dissent below, plaintiff appeals to us as of right under *Rule* 2:2–1(a). After oral argument, we requested that the parties brief the issue of whether the itemized telephone bills are subject to the Right-to-Know Law.

## II

At first glance, the question of whether the public should have access to the toll-billing telephone records of public officials under the Right-to-Know Law seems to answer itself. The public has paid for the telephone calls; the numbers called have been recorded on the bill that the public body has paid; the public should have the right to learn the identity of the person called by the public official.

In Right-to-Know cases courts must maintain critical focus on the nature of the public records sought. Not all public records are Right-to-Know records. There is a narrow but important distinction between records "required by law to be made, maintained or kept on file," which are Right-to-Know records, *N.J.S.A.* 47:1A–2, and written records "made by public officers in the exercise of public functions," which are common-law records. *Nero v. Hyland,* 76 *N.J.* 213, 221–23, 386 *A.2d* 846

(1978). We have repeatedly noted that distinction and its relevance.

■ Under the Right-to-Know Law, any citizen, without any showing of personal or particular interest, has an *unqualified* right to inspect public documents if they are, in fact, the statutorily-defined records. *Irval Realty Inc. v. Board of Pub. Util. Commr's*, 61 *N.J.* 366, 372–73, 294 *A.*2d 425 (1972). In contrast, the citizen's common-law right to gain access to other public records requires a balancing of interests. *McClain v. College Hosp.*, 99 *N.J.* 346, 492 *A.*2d 991 (1985).

■ The documents that the Newspaper seeks in this case are the itemized telephone bills for long-distance and car-phone calls. Included in those bills are the telephone numbers called by the Freeholders. The question is whether those itemized bills constitute records "required by law to be made, maintained or kept." Obviously, no law explicitly requires the public body to make a record of telephone numbers called by public officials; otherwise, the local calls, which are not recorded, would have to be recorded as well.

Plaintiff contends that the public agency must make a record of all the detail included with the bill because the Local Fiscal Affairs Law, *N.J.S.A.* 40A:5-1 to –42, requires the party submitting a voucher to include "a detailed bill of items or demand." *N.J.S.A.* 40A:5-16a. The Board and the Attorney General counter that a summary of the bill is sufficient for payment purposes, and therefore the itemized bill including the numbers called is not necessary for payment of the bill. The Board also points out that for many, if not most, calls only the message units for each phone are shown on the telephone bill. The message units appear on the County's telephone bill without showing any corresponding telephone numbers. A recent Passaic County telephone bill included a $6512 charge for message units.

The Board further states that in the past, the detailed billing information requested, which includes the telephone number

called and the date, time, and length of call, was not included on the vouchers and yet the vouchers were paid. The Board argues that because the requested information was not necessary then, and the same detailed statutory requirement existed, it is not necessary now.

In response, the Newspaper contends that the meaning of the term "detailed" is meant to grow with the times. It argues that "the requirements necessary to meet the test of 'detailed' increases as the information routinely afforded in the marketplace increases and as custom, evolving hand-in-hand with the informational growth, dictates." Thus, it urges that the informational standards and customs that prevailed in 1960—the year of enactment of the current version of *N.J.S.A.* 40A:5–16a in which the term "detailed" appears—should not exclusively govern 1990 results. What qualified as "detailed" in 1960, when telephone bills contained much less detailed information due to inferior technology, is no longer considered "detailed" in 1991. Today, advanced technology allows the telephone company to provide the consumer with detailed information, such as number, date, time, and length of call. The Newspaper argues that because that information is routinely available and customarily demanded and received, it meets the statutory test of "detailed." In short, plaintiff argues that the more information that is accumulated, the more information the Legislature intended to disclose. We think not.

We doubt that the Legislature intended that all detailed information a modern computer-based system can generate constitutes records "required by law to be made, maintained or kept" under the Right-to-Know Law. This is not the first time that parties have sought to expand the scope of the Right-to-Know Law by "engrafting" on it the record-retention features of another law—for example, the Destruction of Public Records Law, *N.J.S.A.* 47:3–15 to –32. *Nero, supra,* 76 *N.J.* at 221, 386 *A.2d* 846. In *Nero,* Justice Pashman stated that however salutary the purpose of the Right-to-Know Law, "creative judi-

cial expansion" of the law "by reference to a related statute" was not appropriate. *Ibid.*

Thus, not every record held by a public agency is a record that is required to be "made, maintained or kept." In our recent decision in *Techniscan Corp. v. Passaic Valley Water Commission,* 113 *N.J.* 233, 549 *A.*2d 1249 (1988), we noted that simply because a public water utility kept computer-generated billing-record dailies in its file did not establish that those printouts were Right-to-Know records. *See also In re Solid Waste Util. Customer Lists,* 106 *N.J.* 508, 525, 524 *A.*2d 386 (1987) (customer lists filed with Board of Public Utilities pursuant to an administrative order were not Right-to-Know records).

The conceptual models of the Right-to-Know Law—the minutes of public meetings, the tax assessor's books—do not seem readily adaptable to the data collected in the information age. In response to these changing conditions, our lawmakers have considered amendments to the Right-to-Know Law that would clarify both the definition of records that have to be disclosed and those that may remain confidential. *See* S2820, 204 Leg., 1st Sess. (1990). For example, the federal Freedom of Information Act allows the redaction of the identities of persons when necessary to preserve privacy interests. *United States Dep't of State v. Ray,* — *U.S.* —, —, 112 *S.Ct.* 541, 549, 116 *L.Ed.*2d 526, 543 (1991).

### III

In the interim, while current law governs, our traditions of openness and hostility to secrecy in government will justly accommodate the concerns expressed here. Our common-law standards provide a balanced consideration of the public need for the numbers called and the need for confidentiality. *See Loigman v. Kimmelman,* 102 *N.J.* 98, 505 *A.*2d 958 (1986). We assume that the primary concern is the misuse of public funds. One problem with unrestricted access to the telephone numbers called is the disclosure not only of the record of the public

official's calls but, inferentially, the identity of those who have called the official. Phone calls made to the public official's office will usually be returned, and in the case of car phones, incoming numbers are always recorded.

A second problem with the disclosure of the identity of such callers is that it may directly conflict with an express legislative policy or the needs of government. A clear example of such a statutorily-forbidden consequence would be the disclosure of the identity of one reporting child abuse to a Division of Youth and Family Services caseworker. The Legislature has implicitly forbidden the disclosure of the identity of such persons. *N.J.S.A.* 9:6–8.10a. A more mundane example would be of a neighbor calling to complain of an ordinance violation.

In addition, there may be times—and they may be the most critical times—when a government official will have to make a telephone call that has an arguable claim to confidentiality—times when, for example, a mayor might need to call a city council member from an opposing political party on a most highly sensitive community issue to enlist that person's support; or times when a mayor might need to call a community activist to calm troubled waters, without causing disruption that might result from appearing to negotiate with a dissident who may, at the moment, be perceived as a lawbreaker. Those communications appear to be protected, at the state level, by the "official information" privilege. *See Evid.R.* 34; *N.J.S.A.* 2A:84A–27 (disclosure of "official information" of the State precluded when harmful to the interests of the public).

If determining the identity of callers becomes necessary to prevent possible misuse of public funds (for example, if a public official is conducting a private business at public expense), a court may require preliminary disclosure to it of the identity of the persons called and the public nature of the calls. *See Loigman, supra,* 102 *N.J.* at 112–13, 505 *A.2d* 958.

We are a society committed to openness in government. Our courts stand ready to enforce the social policy established by

our Legislature on behalf of the public in this area. We do not believe, however, that the Legislature has yet transposed into the public prism every detail of information that public bodies assemble. We believe that what the Legislature had in mind when enacting the Right-to-Know Law was full and unrestricted citizen access to all the records that would allow public involvement in most aspects of government. "Stated simply, that public interest is in access to sufficient information to enable the public to understand and evaluate the reasonableness of the public body's action." *South Jersey Publishing Co. v. New Jersey Expressway Auth.*, 124 *N.J.* 478, 494–95, 591 *A.*2d 921 (1991). Here, almost everything necessary to evaluate the actions of the government official is concededly available: the amount of the telephone bills, the names of the persons who have incurred the bills, and a comparison of the bills with prior expenditures. That information will apprise the public of governmental waste without requiring inferential disclosure of the identity of the neighbor who had called to complain of a zoning violation, or the neighbor who had called to report a terrible case of child abuse, or of the community member reputed to oppose the official who called to make peace.

Thus, we believe that to interpret the Right-to-Know Law to require unqualified disclosure of the identity of the persons whom public officials have called is incorrect. We need not debate whether the Legislature could require such disclosure under the guarantees provided by the New Jersey Constitution. As we explained in *State v. Mollica*, 114 *N.J.* 329, 554 *A.*2d 1315 (1989), a person's privacy interest includes "the people and places one calls on a telephone, no less than the resulting conversations." *Id.* at 344, 554 *A.*2d 1315. Thus, a person's expectation of privacy extends to telephone toll-billing records. *Id.* at 341–42, 554 *A.*2d 1315. That expectation of privacy is rooted in a strong legislative tradition of protecting the privacy of telephone communications. *State v. Minter*, 116 *N.J.* 269, 276, 561 *A.*2d 570 (1989).

In its *amicus* brief the American Civil Liberties Union (ACLU) did not dispute that, despite the privacy interests involved, the Legislature could require full disclosure of the toll-billing records of official calls. The ACLU recommended, however, that we interpret the Right-to-Know Law to require disclosure of the detailed telephone bills, including the telephone numbers called, only in the case of official calls made by the Board members. With respect to the personal calls, for which the Board members reimburse the County, the ACLU reasoned that there was a sufficient showing of public interest to require disclosure of only the cost and quantity of such personal calls. The telephone numbers called, on the other hand, were subject to the privacy protection afforded by the New Jersey Constitution.

Although that is a salutary recommendation, it does not fully accommodate the concern for non-disclosure of the identity of private citizens who have called government officials. It also fails to account for the Attorney General's legitimate concern over the disclosure of otherwise-protected executive communications. *See N.J.S.A.* 2A:84A–27. Although we do not believe that *N.J.S.A.* 2A:84A–27 qualifies the otherwise-unrestricted right of citizen access granted under the Right-to-Know Law, we should try to avoid a conflict between related provisions of law when possible. *See Nero, supra,* 76 *N.J.* at 221, 386 *A.*2d 846. That result readily can be accomplished under existing law. There need be no wholesale disclosure of the billing records to vindicate the public interest. The identity of the persons called may be disclosed upon a showing of public need that outweighs the privacy interests involved. To repeat what we said in *South Jersey Publishing,*

> "[a] popular Government without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy; or perhaps both. Knowledge will forever govern ignorance. And a people who mean to be their own Governors, must arm themselves with the power which knowledge gives."
>
> [124 *N.J.* at 491–92, 591 *A.*2d 921 (quoting Letter to W.T. Barry, Aug. 4, 1822, in 9 James Madison, *Writings of James Madison* 103 (G. Hunt ed. 1910)).]

Sufficient knowledge must be afforded to the public to empower it to evaluate public officials' use or misuse of public telephones. That knowledge can be obtained without unnecessary disclosure of the identity of persons called.

The judgment of the Appellate Division is modified. The matter is remanded to the Law Division for further proceedings in accordance with this opinion.

*For Modification and Remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.