689 A.2d 702

WELLS H. KEDDIE AND THE RUTGERS COUNCIL OF AAUP CHAPTERS, PLAINTIFFS–RESPONDENTS AND CROSS–APPELLANTS, v. RUTGERS, THE STATE UNIVERSITY, DEFENDANT–APPELLANT AND CROSS–RESPONDENT.

Argued October 22, 1996—Decided March 6, 1997.

*John J. Peirano, Jr.* argued the cause for appellant and cross-respondent (*Carpenter, Bennett & Morrissey*, attorneys; *Mr. Peirano* and *James P. Lidon,* on the briefs).

*Paul Schachter* argued the cause for respondents and cross-appellants (*Reinhardt & Schachter*, attorneys; *Denise Reinhardt,* of counsel; *Ms. Reinhardt, Nancy M. Macirowski* and *Susan J. Kraham,* on the briefs).

*Mark J. Fleming,* Assistant Attorney General, argued the cause for amicus curiae, Attorney General of New Jersey (*Peter G. Verniero,* Attorney General, attorney; *Michael J. Haas,* Senior Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

COLEMAN, J.

The issue raised in this appeal is whether a taxpaying citizen of this State who is also a professor at Rutgers, the State University ("Rutgers"), has either a statutory or common-law right to access "public records" concerning Rutgers' expenditures for outside legal counsel in labor, civil rights, and employment-related matters in which Rutgers is or has recently been a party. The trial court denied access under both the common law and the Right–to–Know Law, *N.J.S.A.* 47:1A–1 to –4. The Appellate Division reversed, holding that all of the attorneys bills and the internally generated legal billing documents requested were "public records" under the Right–to–Know Law. 286 *N.J.Super.* 285, 297, 669 *A.*2d 247 (App. Div.1996). The Appellate Division also held that Rutgers was not obligated to provide plaintiffs with either legal documents and decisions filed with courts, agencies, and arbitral forums, or a list of pending legal matters. *Id.* at 297–98, 669 *A.*2d 247.

We hold that none of the documents requested are "public records" under the Right–to–Know Law because they are not explicitly required "to be made, maintained or kept on file" by Rutgers. *N.J.S.A.* 47:1A–2. We conclude, however, that all of the documents are common-law-public records.

## I

Plaintiff Wells H. Keddie is a citizen of New Jersey and a professor of Labor Studies at Rutgers. Plaintiff Rutgers Council of American Association of University Professors Chapters ("AAUP–Rutgers") is an unincorporated association which, for purposes of collective negotiation, represents certain faculty members, teaching assistants, and graduate assistants employed by Rutgers. AAUP–Rutgers is an affiliate of the American Association of University Professors, a national organization that has advocated faculty participation in university budgetary matters. When the present litigation began, Keddie was president of AAUP–Rutgers.

Rutgers is an instrumentality of the State for the purpose of operating the State University of New Jersey pursuant to *N.J.S.A.* 18A:65–1 to –73. The Board of Governors is the ultimate governing authority for Rutgers. *N.J.S.A.* 18A:65–25. Rutgers has five campuses in the New Brunswick area, as well as major campuses in Newark and Camden.

On September 23, 1992, plaintiffs requested "public records" from Rutgers' president. The requested documents related to the expenditure of Rutgers' funds for legal representation in matters related to labor relations, civil rights claims, and other employment-related matters. They also requested copies of documents filed with courts, agencies, and arbitral forums. The documents requested can be classified in three categories: (1) attorneys bills; (2) documents Rutgers generates internally from the legal bills; and (3) pleadings, briefs, affidavits, and other filings made with courts, agencies, and arbitral forums and the decisions or awards rendered ("legal submissions"). University Counsel denied the requests, asserting that the legal submissions were available from other sources, and that Rutgers was not required to disclose the other records that were requested.

Plaintiffs filed a complaint on November 30, 1992, seeking access to the documents previously requested pursuant to the common law and the Right–to–Know Law, *N.J.S.A.* 47:1A–1 to –4

("The RTKL"). An explanation of the legal billing procedure at Rutgers is essential to an understanding of the types of documents requested from Rutgers.

The standard procedure at Rutgers is that outside attorneys send monthly bills to University Counsel, who then forwards the bills to Rutgers' comptroller. The Comptroller's Department then prepares a "bill head," consisting of the law firm's name, address, due date, and the amount due. The legal bill and the "bill head" are then attached and sent to a Rutgers accountant for payment approval. Once approved by an accountant, the documents are then sent to the Accounts Payable Department where the information is entered into a database, and the hard copy is archived for seven years. University Counsel also keeps copies of the legal bills for two years before archiving them. Biannually, a Rutgers accountant prepares a summary of the outside legal expenses for University Counsel. That summary contains the dollar amounts paid to particular law firms and brief descriptions of the work performed.

Consistent with that explanation of the legal billing process, plaintiffs sought access to attorneys bills and the following internally generated payment information: bill heads, semiannual summaries of legal expenses generated by the accounting office, and the actual accounts payable database kept by Rutgers' accountant. Plaintiffs also sought access to all of the legal submissions.

After extensive discovery had been conducted, the parties filed cross-motions for summary judgment. Plaintiffs argued that the records pertaining to legal billings were public documents under both the RTKL and the common law and that the legal submissions were accessible under only the common law.

The trial court held that (1) Rutgers is a public body and therefore covered by the RTKL; (2) none of the requested documents were public records under the RTKL; (3) the outside attorneys bills were not common-law-public records; and (4) the internally generated legal billing documents and the legal submissions were public records within the common-law definition but

were not accessible by plaintiffs because Rutgers' interest in nondisclosure manifestly outweighed plaintiffs' interest in disclosure. The trial court, however, ordered Rutgers to provide plaintiffs with an ongoing list of cases it is involved in concerning labor, employment, and civil rights matters. Rutgers was also ordered to forward to plaintiffs a copy of any final decision or award and other relevant data such as docket numbers and venue on new cases.

The Appellate Division reversed, finding that the attorneys bills and the internally generated legal billing documents were public documents under the RTKL. 286 *N.J.Super.* at 297, 669 *A.*2d 247. The Appellate Division reasoned that the billing documents were public records under the RTKL because "Rutgers can[not] realistically be prepared for an 'audit by the State at any time' without maintaining such records." *Ibid.* (quoting *N.J.S.A.* 18A:65–25(d)). The Appellate Division also reversed the trial court's order requiring Rutgers to provide periodic updates on pending and new matters, concluding that Rutgers did not have an obligation to provide copies of legal submissions because they were filed at various clerks' offices of the courts or tribunals involved. *Id.* at 297–98, 669 *A.*2d 247.

We granted Rutgers' petition for certification, 144 *N.J.* 377, 676 *A.*2d 1092 (1996), and now reverse.

## II

First, we focus on whether the attorneys bills and the internally generated legal billing documents are public records under the RTKL. The New Jersey Right–to–Know Law provides in pertinent part:

Except as otherwise provided ..., all records which are required by law to be made, maintained or kept on file by any board, body, agency, department, commission or official of the State or of any political subdivision thereof or by any public board, body, commission or authority created pursuant to law by the State or any of its political subdivisions, or by any official acting for or on behalf thereof (each of which is hereinafter referred to as the "custodian" thereof) shall, for the purposes of this act, be deemed to be public records. Every citizen of this State,

during the regular business hours maintained by the custodian of any such records, shall have the right to inspect such records. Every citizen of this State shall also have the right, during such regular business hours and under the supervision of a representative of the custodian, to copy such records by hand, and shall also have the right to purchase copies of such records.

[*N.J.S.A.* 47:1A–2.]

The RTKL has no standing requirement other than New Jersey citizenship. *Higg–A–Rella, Inc. v. County of Essex,* 141 *N.J.* 35, 43, 660 *A.*2d 1163 (1995). A citizen is not required to make a showing of interest. *Ibid.* Under the RTKL, the narrow question is whether the disputed records are required by law "to be made, maintained or kept on file." *N.J.S.A.* 47:1A–2. If that requirement is satisfied, the documents qualify as public records under the RTKL. Once documents are found to be Right–to–Know records, citizens of New Jersey have an almost absolute right to inspect, copy, or purchase those documents. *Higg–A–Rella, supra,* 141 *N.J.* at 43, 660 *A.*2d 1163; *North Jersey Newspapers Co. v. Passaic County Bd. of Chosen Freeholders,* 127 *N.J.* 9, 14, 601 *A.*2d 693 (1992). Inspection or copying of Right–to–Know documents is subject only to reasonable controls with respect to time, place, and reproduction costs. *De Lia v. Kiernan,* 119 *N.J.Super.* 581, 585, 293 *A.*2d 197 (App.Div.), *certif. denied,* 62 *N.J.* 74, 299 *A.*2d 72 (1972); *N.J.S.A.* 47:1A–2. No balancing of interests is permitted, so long as the documents are not intended to be used for an inappropriate purpose.

Plaintiffs maintain that all of the documents pertaining to the legal billings are Right–to–Know documents because they are required by law to be made, maintained, or kept by Rutgers to comply with State auditing requirements. All of Rutgers' accounts are "subject to audit by the State at any time." *N.J.S.A.* 18A:65–25(d). Plaintiffs argue that in order for Rutgers to be prepared for a State audit, it must maintain financial records sufficient to withstand such an audit. Rutgers counters that *N.J.S.A.* 18A:65–25(d) does not *explicitly* require that the attorneys bills and the internally generated legal billing documents be made, maintained, or kept on file, and that therefore the RTKL is not triggered. Rutgers argues that the RTKL only encompasses

records *explicitly* required to be maintained. It asserts that the State's audit requirements only *implicitly* require the attorneys bills and the internally generated legal billing documents be maintained.

The question we must resolve is whether the RTKL implicitly requires the attorneys bills and the internally generated legal billing documents be made, maintained, or kept on file by Rutgers in order to comply with the State's demand audits of Rutgers' accounts. The broad question was posited, but not answered, in *Board of Education v. New Jersey Department of the Treasury,* 145 *N.J.* 269, 678 *A.*2d 660 (1996): whether the underlying data that is needed to create a statutorily required annual report is a public document under the RTKL. *Id.* at 277–79, 678 *A.*2d 660.

In *Board of Education,* the Board of Education of Newark ("Board") was a participating employer in the State Health Benefits Plan ("Plan"). *Id.* at 271, 678 *A.*2d 660. The Board requested that the State Health Benefits Commission ("Commission") provide it with information on medical claims paid by the Plan on behalf of the Board's employees. *Id.* at 271–72, 678 *A.*2d 660. The New Jersey State Health Benefits Program Act ("Act") requires that the Commission prepare an annual report "showing the fiscal transactions of the program for the preceding year and stating other facts pertaining to the plan." *N.J.S.A.* 52:14–17.27. The Act, however, does not require that the annual report list the claims paid for each employer participating in the Plan. Nor is the Commission required to compile the claims histories of each participating employer to fulfill its statutory duties with respect to the report.

The Court held that the information that the Board ultimately sought, the amount of claims paid on behalf of its own employees, did not constitute a Right–to–Know document because it was not required by law to be made, maintained, or kept on file. *Board of Educ., supra,* 145 *N.J.* at 277, 678 *A.*2d 660. The Court decided not to reach the issue of whether the unsegregated data of individual claims, which are necessary to prepare the aggregate

figures for the annual report, were public documents under the RTKL. It so decided because the Legislature had recently amended the RTKL, codified at *N.J.S.A.* 47:1A–2.1, to limit public access to hard copies of computerized records. *Board of Educ., supra,* 145 *N.J.* at 277–79, 678 *A.*2d 660.

Notwithstanding the fact that the *Board of Education* case left the burning issue unanswered, this Court has consistently held that the Right–to–Know Law's definition of a public record is narrow and is to be strictly construed. *Higg–A–Rella, supra,* 141 *N.J.* at 44, 660 *A.*2d 1163. In *Nero v. Hyland,* 76 *N.J.* 213, 386 *A.*2d 846 (1978), this Court rejected "any expansion of the plain wording of the definition of public record under" the RTKL. *Id.* at 221, 386 *A.*2d 846.

In *Nero,* former Governor Byrne had considered appointing the plaintiff to a position on the New Jersey Lottery Commission. *Id.* at 216, 386 *A.*2d 846. When the appointment was not announced, Governor Byrne was asked at a news conference why he had not appointed the plaintiff. *Id.* at 217, 386 *A.*2d 846. The thrust of the Governor's response was that the plaintiff had not been appointed because the then Attorney General was concerned over certain information regarding the plaintiff's background that was uncovered in the standard background check. *Ibid.* Subsequently, the plaintiff sought access to the background check information under the RTKL and the common law. *Ibid.*

The *Nero* Court held that the trial court and the Appellate Division incorrectly expanded the Right–to–Know Law's definition of a public record to make that definition coextensive with the definition of a public record found in the Destruction of Public Records Law, *N.J.S.A.* 47:3–16. *Nero, supra,* 76 *N.J.* at 221, 386 *A.*2d 846. That statute defines a public record as:

> any paper, written or printed book, document ... that has been received by any such officer, commission, agency or authority of the State or of any political subdivision thereof ... and has been retained by such recipient or its successor as evidence of its activities or because of the information contained therein.
>
> [*N.J.S.A.* 47:3–16.]

Although the background check information would be considered a public document under the Destruction of Public Records Law's definition, that information was not required to be made, maintained, or kept by a governmental body under the Destruction of Public Records Law. *Nero, supra*, 76 *N.J.* at 220, 386 *A.*2d 846. Hence, the *Nero* Court concluded that the background check information was not a public document under the RTKL. *Ibid.*

*Atlantic City Convention Center Authority v. South Jersey Publishing Co.*, 135 *N.J.* 53, 637 *A.*2d 1261 (1994), held that audio tapes of a closed session of the Authority were not Right–to–Know public documents. *Id.* at 64, 637 *A.*2d 1261. Under the Open Public Meetings Act, *N.J.S.A.* 10:4–6 to –21, public agencies are required to keep minutes of their meetings, but there is no requirement that the sessions be tape-recorded. *Atlantic City, supra*, 135 *N.J.* at 63, 637 *A.*2d 1261. The fact that the Authority used the audio tapes merely as a convenience for its own purposes in preparing the official minutes did not convert the audio tapes into Right–to–Know public documents. *Ibid.*

Similarly, in *Higg–A–Rella* the Court held that computer tapes of municipal tax assessments were not Right–to–Know public records because the defendants were required by law only to make and maintain a hard copy of the list. *Higg–A–Rella, supra*, 141 *N.J.* at 44–45, 660 *A.*2d 1163. Because no law required the defendants to make the computer tape, the plaintiffs had a right to only a printed copy generated from the computer tapes. *Ibid.*

In *North Jersey Newspapers*, the Court also concluded that telephone bills and car-phone bills of the Passaic County Board of Chosen Freeholders office were not public documents under the RTKL. *North Jersey Newspapers, supra*, 127 *N.J.* at 15, 601 *A.*2d 693. The fact that the Local Fiscal Affairs Law, *N.J.S.A.* 40A:5–1 to –42, required a party submitting a voucher to include a detailed bill of items sought to be paid did not make the telephone and car-phone bills public documents under the RTKL. *North Jersey Newspapers, supra*, 127 *N.J.* at 14–15, 601 *A.*2d 693.

Many other cases have similarly construed the RTKL narrowly. *See, e.g., In re the Request for Solid Waste Util. Customer Lists,* 106 *N.J.* 508, 525, 524 *A.*2d 386 (1987) (holding that customer lists filed with Board of Public Utilities pursuant to administrative order were not Right–to–Know records); *Home News v. Board of Educ.,* 286 *N.J.Super.* 380, 385–86, 669 *A.*2d 295 (App.Div.1996) (holding that working documents prepared by school officials in connection with annual budget process were not public records under RTKL because there was no legal requirement that particular documents sought be made, maintained, or kept on file); *Red Bank Register, Inc. v. Board of Educ.,* 206 *N.J.Super.* 1, 6–7, 501 *A.*2d 985 (App.Div.1985) (holding that because no law required school board to maintain or keep curriculum reports on file, they were not Right–to–Know Law documents); *Beck v. Bluestein,* 194 *N.J.Super.* 247, 258, 476 *A.*2d 842 (App.Div.1984) (stating that where "there is no statutory or regulatory requirement which . . . mandates . . . an investigatory record be made, maintained or kept," records are not public records under Right–to–Know Law).

We hold that because *N.J.S.A.* 18A:65–25(d) does not explicitly require that the attorneys bills and the internally generated legal billing documents "be made, maintained or kept on file," *N.J.S.A.* 47:1A-2, in order to satisfy auditors, those documents are not Right–to–Know documents. We find no reason to depart from our consistent holdings in the past. Therefore, the Appellate Division erred when it ruled that the attorneys bills and the internally generated legal billing documents were Right–to–Know documents.

## III

Next, we address plaintiffs' claim that, independent of whether they are entitled to access the attorneys bills and the internally generated legal billing documents under the RTKL, they have a common-law right of access to those documents and the legal submissions as well. The Appellate Division did not decide whether plaintiffs should have access to any of the records under the

common law. Implicitly, the Appellate Division reasoned that even if the legal submissions were common-law records, plaintiffs' demands should not be granted because the records are readily available through other means such as the "various clerks' offices of the courts or tribunals involved." 286 *N.J.Super.* at 297, 669 *A*.2d 247. The availability of the legal submissions elsewhere caused the Appellate Division to conclude that no law mandates that a public body provide such documents to a citizen who "already has a direct and readily available means of access to those documents." *Id.* at 298, 669 *A*.2d 247.

We granted plaintiffs' cross-petition for certification, 144 *N.J.* 377, 676 *A*.2d 1092 (1996), to address whether plaintiffs should have access to the documents under the common law.

-A-

Rutgers argues that because the trial court denied access to the internally generated legal billing documents and the legal submissions under the common-law balancing-of-interests test, which was not overturned by the Appellate Division, the issue of common-law access to those documents is not before the Court. Nor did the Appellate Division address whether the trial court erred in finding the attorneys bills were not common-law records. Notwithstanding that omission, we will address the merits of the common-law claims. *R.* 2:10–5; *Bressman v. Gash,* 131 *N.J.* 517, 528–29, 621 *A*.2d 476 (1993).

The common-law definition of a public record is broader than the definition of a Right–to–Know document. *Home News v. State Dep't of Health,* 144 *N.J.* 446, 453, 677 *A*.2d 195 (1996). A common-law record is one that is made by a public official in the exercise of his or her public function, either because the record was required or directed by law to be made or kept, or because it was filed in a public office. *Higg–A–Rella, supra,* 141 *N.J.* at 46, 660 *A*.2d 1163; *North Jersey Newspapers, supra,* 127 *N.J.* at 13, 601 *A*.2d 693; *Nero, supra,* 76 *N.J.* at 221–22, 386 *A*.2d 846. Thus, all RTKL documents are common-law records as well. But not all common-law records are RTKL documents. Unlike RTKL

documents, the right to access common-law records is a qualified one. *Home News, supra,* 144 *N.J.* at 453, 677 *A.*2d 195.

■ The common-law right to access public records depends on three requirements: (1) the records must be common-law public documents; (2) the person seeking access must "establish an interest in the subject matter of the material," *South Jersey Publishing Co. v. New Jersey Expressway Auth.,* 124 *N.J.* 478, 487, 591 *A.*2d 921 (1991); and (3) the citizen's right to access "must be balanced against the State's interest in preventing disclosure." *Higg–A–Rella, supra,* 141 *N.J.* at 46, 660 *A.*2d 1163.

■ The documents sought in the present case are public records because they were created by, or at the behest of, public officers in the exercise of a public function. *Id.* at 47, 660 *A.*2d 1163. They were created pursuant to Rutgers' procedure for payment of legal fees to outside attorneys or were filed with a court, agency, or arbitral forum. They are also writings filed in a public office. *Nero, supra,* 76 *N.J.* at 222, 386 *A.*2d 846. Keddie, as a citizen of New Jersey, a professor of Labor Studies at Rutgers, and president of AAUP–Rutgers, clearly has a cognizable common-law interest in accessing all of the documents. Indeed, only the balancing-of-interests element is contested in this case. Consequently, the trial court erred in finding that the attorneys bills were not common-law records. We hold that all of the documents sought are common-law records.

-B-

Because the common-law right of access to public records is not absolute, one seeking access to such records must "establish that the balance of its interest in disclosure against the public interest in maintaining confidentiality weighs in favor of disclosure." *Home News, supra,* 144 *N.J.* at 454, 677 *A.*2d 195. Thus, it has been said that the balancing process is "concretely focused upon the relative interests of the parties in relation to [the] specific materials." *McClain v. College Hosp.,* 99 *N.J.* 346, 361, 492 *A.*2d 991 (1985); *Atlantic City, supra,* 135 *N.J.* at 60, 637 *A.*2d 1261 (quoting *McClain, supra,* 99 *N.J.* at 361, 492 *A.*2d 991).

 Generally, the public's interest in nondisclosure is based on the need to keep the information confidential. Where a claim of confidentiality is asserted, the applicant's interest in disclosure is more closely scrutinized. In that context, courts consider whether the claim of confidentiality is " 'premised upon a purpose which tends to advance or further a wholesome public interest or a legitimate private interest.' " *Loigman v. Kimmelman*, 102 *N.J.* 98, 112, 505 *A.*2d 958 (1986) (quoting *City of St. Matthews v. Voice of St. Matthews, Inc.*, 519 *S.W.*2d 811, 815 (Ky.1974)). However, where the interest in confidentiality is "slight or non-existent," standing alone will be sufficient to require disclosure to advance a legitimate private interest. *Id.* at 105, 505 *A.*2d 958; *see also McClain, supra*, 99 *N.J.* at 362, 492 *A.*2d 991.

 Rutgers asserts no claim of confidentiality in respect of the legal submissions. Indeed, it could not. Those documents have been filed with courts, agencies, or arbitral forums. A common-law right of access attaches to unsealed records and documents filed with courts and agencies in connection with nondiscovery applications that are relevant to the disposition of the matter. *Hammock v. Hoffmann–LaRoche, Inc.*, 142 *N.J.* 356, 375–82, 662 *A.*2d 546 (1995). Once the records and documents were filed with courts, agencies, and arbitral forums without being sealed, Rutgers no longer retained any expectation of confidentiality in them.

Rutgers argues, and the Appellate Division agreed, that because the legal submissions are otherwise available, it should not be required to make those documents available to plaintiffs. Rather than asserting a claim of confidentiality, Rutgers argues that document production will divert budgeted funds and dedicated manpower and that those concerns should be considered under the balancing test. In response, plaintiffs raise three arguments: (1) the availability of documents elsewhere does not undermine their interest in disclosure; (2) the right to access common-law public records has traditionally favored full disclosure; and (3) the legal submissions may in fact not be available elsewhere because some arbitration cases are sealed for five years.

 The availability of the legal-submissions documents else-where is significant only with respect to demonstrating the ab-sence of any need to protect confidentiality. Where common-law documents have been filed with courts, agencies, and arbitral forums without being sealed, confidentiality is nonexistent; stand-ing alone is sufficient to require disclosure unless otherwise pro-tected by one of the exceptions articulated in the RTKL. *Loig-man, supra,* 102 *N.J.* at 105, 505 *A.*2d 958; *Shuttleworth v. City of Camden,* 258 *N.J.Super.* 573, 579, 610 *A.*2d 903 (App.Div.), *certif. denied,* 133 *N.J.* 429, 627 *A.*2d 1135 (1992). The obligation for disclosure of common-law records when confidentiality is nonexis-tent is not diminished simply because the information is publicly available from another source or because the information has been disclosed to or by another entity. *See United States Dep't of Justice v. Tax Analysts,* 492 *U.S.* 136, 152, 109 *S.Ct.* 2841, 2852, 106 *L.Ed.*2d 112, 130 (1989) (interpreting the Freedom of Informa-tion Act); *Petroleum Information Corp. v. United States Dep't of the Interior,* 976 *F.*2d 1429, 1437 (D.C.Cir.1992) (same); *Yorkshire v. Internal Revenue Serv.,* 829 *F.Supp.* 1198, 1202 (C.D.Cal.1993) (same), *aff'd,* 26 *F.*3d 942 (9th Cir.1994), *cert. denied,* 513 *U.S.* 989, 115 *S.Ct.* 487, 130 *L.Ed.*2d 399 (1994).

We conclude that the trial court erred in finding that the legal submissions should not be disclosed under the common-law balanc-ing-of-interests test. Plaintiffs, however, must bear the reason-able costs of copying, assembling, and delivering the documents. *Higg–A–Rella, supra,* 141 *N.J.* at 53–55, 660 *A.*2d 1163.

-C-

There remains the question whether plaintiffs are entitled to access the attorneys bills and the internally generated legal billing documents under the balancing test.

Rutgers argues that those documents should not be disclosed because under the balancing test the need for confidentiality outweighs plaintiffs' interest in disclosure. Although the Appel-late Division found that the attorneys bills and the internally

generated legal billing documents were Right–to–Know documents, it remanded the matter to the trial court to consider disclosing only the biannual summaries of the legal expenses rather than the bill heads and payment vouchers. That remand was based on some "concern for any possibility of [disclosing] information that might be the subject of attorney-client confidentiality, as well as the cost of producing the documents." 286 *N.J.Super.* at 297, 669 *A.*2d 247. We granted plaintiffs' cross-petition for certification in part to consider the propriety of the remand.

We reject Rutgers' argument that the costs of document production and diversion of dedicated manpower are sufficient reasons under the balancing test not to compel it to produce the documents. Budgetary constraints cannot relieve Rutgers of its obligation to produce the documents. *Moore v. Board of Chosen Freeholders,* 39 *N.J.* 26, 30–31, 186 *A.*2d 676 (1962). Rutgers is entitled, however, to collect from plaintiffs a reasonable fee to cover its reproduction and delivery expenses. *Higg–A–Rella, supra,* 141 *N.J.* at 53–55, 660 *A.*2d 1163.

As we noted earlier, *supra* at 44, 689 *A.*2d at 706, once the Appellate Division found that the documents were Right–to–Know records, albeit incorrectly, the right to inspect and copy became absolute, even if the documents contained confidential or privileged information. However, under our conclusion that the documents are not Right–to–Know records, that error was harmless.

Nonetheless, the Appellate Division's concerns about confidentiality are important. Neither court below conducted a common-law balancing test to determine whether the attorneys bills should be disclosed. Consequently, a remand to the trial court is required to conduct a common-law balancing test with respect to the attorneys bills. We are also satisfied that the trial court should conduct a new balancing test with respect to the internally generated legal billing documents consistent with this opinion.

On the remand, all of the attorneys bills and the internally generated documents must be submitted to the trial court for an

*in camera* inspection to conduct a balancing of interest test. The trial court must examine each document individually and make factual findings with regard to why plaintiffs' interest in disclosure is or is not outweighed by Rutgers' interest in nondisclosure. Neither the availability of the documents from other sources, the cost of reproducing those documents, nor the inconvenience to Rutgers may be considered in the balancing of interest test. The trial court on remand may "decide that to release the records in a redacted form, editing out any privileged or confidential subject matter, is appropriate." *South Jersey Publishing, supra,* 124 *N.J.* at 488–89, 591 *A.2d* 921. There is no need to conduct a balancing test with respect to the legal submissions because this Court has directed their disclosure.

The trial court also should consider whether the requested documents relate to pending or closed cases. Obviously, the need for confidentiality is greater in pending matters than in closed cases. Even in closed cases, however, attorney work-product and documents containing legal strategies may be entitled to protection from disclosure. Similarly, some confidential information may be shielded from public disclosure based on the protection afforded by the attorney-client privilege. Here, too, redaction must be considered as an alternative to nondisclosure. Those and all other appropriate factors should be considered by the trial court in the common-law balancing test.

## IV

We reverse the judgment of the Appellate Division insofar as it found that the attorneys bills and internally generated documents were Right–to–Know records. We also reverse the determination that Rutgers is not obligated to provide the legal submissions because they are available elsewhere. We hold that none of the records requested are Right–to–Know documents; all of them are common-law documents. Rutgers is directed to provide plaintiffs with copies of the legal submissions for a reasonable fee. We remand the matter to the trial court to conduct a common-law

balancing test with respect to the attorneys bills and the internally generated legal billing documents in a manner that is consistent with this opinion.

Reversed and remanded to the Law Division.

*For reversal and remandment*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, GARIBALDI, STEIN and COLEMAN—6.

JUSTICE O'HERN did not participate.