SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**American Civil Liberties Union of New Jersey v. County Prosecutors Association of New Jersey** (A-33-22) (087789)

**Argued October 10, 2023 -- Decided April 17, 2024**

**PATTERSON, J., writing for the Court.**

In this appeal, the Court considers whether defendant the County Prosecutors Association of New Jersey (CPANJ) is a public agency required to disclose records pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and a public entity subject to the common law right of access.

CPANJ is a nonprofit association whose members are the twenty-one county prosecutors. It has no employees or office. The ACLU asserts that CPANJ "regularly sends copies of its meeting minutes and agendas" to the Office of the Attorney General and that the county prosecutors who comprise the membership of CPANJ use the resources of their offices to conduct CPANJ business, including "the development of agendas, the coordination of meetings and dinners, and the administration of [CPANJ's] scholarship program." The ACLU states that CPANJ participates as amicus curiae in trial and appellate matters and that it has filed appearances in court. The ACLU asserts that CPANJ uses county prosecutors' resources when it participates in court proceedings as amicus curiae.

On July 19, 2019, the ACLU served a records request on CPANJ's president pursuant to OPRA and the common law right of access. CPANJ denied the request, stating that it was "quite simply not a public agency" as that term is defined by N.J.S.A. 47:1A-1.1. CPANJ also denied the ACLU's request for disclosure of the records pursuant to the common law right of access.

The ACLU filed this action, alleging that CPANJ is a public agency under N.J.S.A. 47:1A-1.1 because it is "an instrumentality created by a combination of political subdivisions to facilitate cooperation between government agencies and other political subdivisions." The ACLU also asserted that the requested documents are public records subject to public access under the common law.

The trial court dismissed the complaint, holding that CPANJ is not a public agency within the meaning of N.J.S.A. 47:1A-1.1 and that, because CPANJ's

1

records were not created under authority granted independently to each county prosecutor, they do not constitute public records for purposes of the common law right of access. The Appellate Division affirmed the dismissal of the ACLU's OPRA claims, and it concurred with the trial court's rejection of the ACLU's common law right of access argument but on different grounds -- namely, that CPANJ is not a public entity and is therefore not subject to the common law right of access. 474 N.J. Super. 243, 268-72 (App. Div. 2022). The Court granted certification. 253 N.J. 396 (2023).

**HELD:** CPANJ is neither a public agency under N.J.S.A. 47:1A-1.1 nor a public entity subject to the common law right of access. The ACLU's factual allegations do not support a claim against CPANJ under OPRA or the common law.

1. OPRA applies only if the entity to which a request is directed meets the statutory definition of a public agency. For purposes of OPRA, the terms "public agency" or "agency" denote the entities specified in N.J.S.A. 47:1A-1.1, which include "any political subdivision of the State or combination of political subdivisions, and any division, board, bureau, office, commission or other instrumentality within or created by a political subdivision of the State or combination of political subdivisions, and any independent authority, commission, instrumentality or agency created by a political subdivision or combination of political subdivisions." The term "political subdivision" denotes a division of a state that exists primarily to discharge some function of local government, such as a county or municipality, as well as certain entities formed by counties and municipalities, such as parking authorities. The ACLU argues that CPANJ is an instrumentality of the county prosecutors. Accordingly, the core question in this appeal is whether a county prosecutor constitutes a "political subdivision" for purposes of OPRA. (pp. 14-22)

2. A county is indisputably a "political subdivision of the State" as defined in OPRA, N.J.S.A. 47:1A-1.1. The status of the counties themselves as political subdivisions under OPRA, however, has no bearing on the analysis. A county prosecutor is distinct from the county that the prosecutor serves for purposes of OPRA's reach. A county prosecutor, like the Attorney General, is a constitutional officer who serves by virtue of gubernatorial nomination and Senate confirmation. Although a county exercises considerable control over the fiscal operations of the county prosecutor's office, a county prosecutor's law enforcement function is unsupervised by county government or any other agency of local government. In short, the county prosecutor is not the alter ego of the county itself, and does not constitute a "political subdivision" as that term is used in N.J.S.A. 47:1A-1.1. CPANJ, meanwhile, constitutes an organization in which the county prosecutors are members and is not the alter ego of the prosecutors themselves. Because a prosecutor does not meet the definition of a "political subdivision" under N.J.S.A. 47:1A-1.1's plain language, CPANJ is not a public agency for purposes of OPRA.

2

The ACLU's factual allegations do not support its assertion that CPANJ is a public agency within the meaning of N.J.S.A. 47:1A-1.1. Because the ACLU did not seek the documents from a public agency in accordance with N.J.S.A. 47:1A-5 and -6, the Court does not reach the question whether the documents identified in its request constitute "government records" under OPRA. (pp. 22-26)

3. A public record under the common law is one that is made by a public official in the exercise of the official's public function, either because the record was required or directed by law to be made or kept, or because it was filed in a public office. Here, the ACLU identifies no statute, regulation, or other mandate requiring CPANJ to create or maintain the requested documents. It suggests no statutory or regulatory mandates of any kind addressing the records at issue. The ACLU does not allege that CPANJ maintains public documents in a public office; indeed, it does not dispute CPANJ's assertion that it maintains no office at all. The ACLU identifies no precedential decision discussing, let alone upholding, a request for public documents served on a private entity such as CPANJ. In short, the ACLU asserts no factual allegations that would suggest that CPANJ constitutes an entity upon which a common law right of access request for documents may properly be served. The Court does not reach the question whether the documents that the ACLU requested from CPANJ would be considered common law public documents if requested from a public entity. (pp. 26-29)

**AFFIRMED.**

**JUSTICE WAINER APTER, dissenting,** expresses the view that the facts alleged about CPANJ, taken in the light most favorable to the ACLU, suggest that CPANJ is simply another name for the county prosecutors themselves and that it therefore meets the definition of "public agency" in N.J.S.A. 47:1A-1.1 in the same way that the county prosecutors' offices themselves do. Looking behind CPANJ's technical form, and construing OPRA "in favor of the public's right of access," N.J.S.A. 47:1A-1, Justice Wainer Apter would hold that the trial court erred in granting CPANJ's motion to dismiss the ACLU's OPRA claim. In addition, Justice Wainer Apter writes, because no private citizens are members of CPANJ, every document recorded, generated, or produced by CPANJ is recorded, generated, or produced by a public official and, because CPANJ maintains all documents in the county prosecutors' offices -- which are public offices under the common law -- CPANJ documents are by definition common law public records. Justice Wainer Apter would therefore hold that the trial court also erred in dismissing the ACLU's claim under the common law.

**CHIEF JUSTICE RABNER and JUSTICES SOLOMON, PIERRE-LOUIS, and FASCIALE join in JUSTICE PATTERSON's opinion. JUSTICE WAINER APTER filed a dissent, in which JUSTICE NORIEGA joins.**

3

SUPREME COURT OF NEW JERSEY

A-33 September Term 2022

087789

American Civil Liberties
Union of New Jersey,

Plaintiff-Appellant,

v.

County Prosecutors
Association of New Jersey,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
474 N.J. Super. 243 (App. Div. 2022).

| Argued | Decided |
|---|---|
| October 10, 2023 | April 17, 2024 |

Karen Thompson argued the cause for appellant
(American Civil Liberties Union of New Jersey
Foundation, attorneys; Karen Thompson, Jeanne
LoCicero, Alexander Shalom, and Elyla Huertas, on the
brief).

Christopher J. Gramiccioni argued the cause for
respondent (Kingston Coventry, attorneys; Christopher J.
Gramiccioni, on the letter brief).

CJ Griffin argued the cause for amici curiae Libertarians
for Transparent Government and the Association of
Criminal Defense Lawyers of New Jersey (Pashman Stein
Walder Hayden, attorneys; CJ Griffin, on the briefs).

1

Thomas H. Prol argued the cause for amicus curiae Municipal Clerks' Association of New Jersey, Inc. (Sills Cummis & Gross, attorneys; Thomas H. Prol, on the brief).

Vito A. Gagliardi, Jr. submitted a brief on behalf of amicus curiae New Jersey State Association of Chiefs of Police (Porzio, Bromberg & Newman, attorneys; Vito A. Gagliardi, Jr., of counsel, and David L. Disler and Thomas J. Reilly, on the brief).

Lawrence S. Lustberg submitted a brief on behalf of amici curiae Salvation and Social Justice and Youth Advocate Programs, Inc. (Gibbons and New Jersey Institute for Social Justice, attorneys; Lawrence S. Lustberg, Julia Bradley (Gibbons) of the New York bar, admitted pro hac vice, Emily Schwartz, Yannick Wood, Henal Patel, and Ryan P. Haygood, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal, we determine whether defendant the County Prosecutors Association of New Jersey (CPANJ), a nonprofit organization whose members are the twenty-one county prosecutors of New Jersey, is a public agency required to disclose records pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and a public entity subject to the common law right of access.

Plaintiff American Civil Liberties Union of New Jersey (ACLU) sought several categories of records from CPANJ pursuant to OPRA and the common law right of access. CPANJ denied the request, asserting that it is not a public

2

agency for purposes of OPRA and is not a public entity subject to the common law right of access. The ACLU filed this action, seeking an order compelling production of the requested documents and other relief.

The trial court granted CPANJ's motion to dismiss the complaint pursuant to Rule 4:6-2(e). The ACLU appealed that determination, and the Appellate Division affirmed the trial court's judgment. The appellate court found that the ACLU's factual allegations did not support its contention that CPANJ is a public agency under OPRA or its assertion that CPANJ is a public entity subject to the common law. ACLU of N.J. v. Cnty. Prosecutors Ass'n of N.J., 474 N.J. Super. 243, 256-72 (App. Div. 2022).

We concur with the Appellate Division that CPANJ is neither a public agency under N.J.S.A. 47:1A-1.1 nor a public entity subject to the common law right of access. We conclude that the ACLU's factual allegations do not support a claim against CPANJ under OPRA or the common law. Accordingly, we affirm the Appellate Division's judgment.

I.

A.

1.

We summarize the ACLU's factual allegations based on the complaint and its attachments.

3

CPANJ is a nonprofit association operating pursuant to Internal Revenue Code § 501(c)(3). Its members are the twenty-one county prosecutors. According to CPANJ's 2015 and 2016 Internal Revenue Service disclosure forms, attached to the ACLU's complaint, the organization's mission is to "maintain close cooperation between the Attorney General of the State of New Jersey, the Division of Criminal Justice of the State of New Jersey and the twenty-one (21) county prosecutors of the State of New Jersey," relating to "developing educational programs so as to promote the orderly administration of criminal justice within the State of New Jersey, consistent with the Constitution and the laws of the State of New Jersey." CPANJ represented in those disclosure forms that it does not compensate its members, who participate as volunteers; that it obtains revenue solely from membership dues, membership assessments, and educational conferences; that it grants scholarships to law students; and that it has no employees or office.

Citing a 1985 joint policy statement between the New Jersey Attorney General and CPANJ regarding prosecutorial review of search warrant applications, as well as CPANJ's involvement in a 2018 initiative to stop violence against women, the ACLU alleged in its complaint that the Office of the Attorney General views CPANJ as a "partner in implementing statewide criminal justice policy." The ACLU noted that pursuant to N.J.S.A. 52:17B-

4

70(b), CPANJ's representative is a member of the Department of Law and Public Safety Police Training Commission, and that under N.J.S.A. 30:4-123.47a, CPANJ's representative is a member of the Parole Advisory Board. The ACLU asserted that CPANJ "regularly sends copies of its meeting minutes and agendas" to the Office of the Attorney General.

The ACLU further alleged in its complaint that the county prosecutors who comprise the membership of CPANJ use the resources of their offices to conduct CPANJ business, including "the development of agendas, the coordination of meetings and dinners, and the administration of [CPANJ's] scholarship program." The ACLU stated that CPANJ participates as amicus curiae in trial and appellate matters and that it has filed appearances in court. The ACLU asserted that CPANJ uses county prosecutors' resources when it participates in court proceedings as amicus curiae.

2.

On July 19, 2019, the ACLU served a records request on CPANJ's president pursuant to OPRA and the common law right of access. The ACLU requested five categories of records for the period between January 1, 2017, and July 19, 2019: (1) CPANJ meeting agendas; (2) CPANJ meeting minutes; (3) records reflecting funding received by CPANJ; (4) briefs filed in state or

federal courts by CPANJ; and (5) policies or practices shared with county prosecutors through CPANJ.

By letter sent from its president to the ACLU on September 18, 2019, CPANJ denied the request. CPANJ stated that it was "quite simply not a public agency" as that term is defined by N.J.S.A. 47:1A-1.1, and that it instead constitutes "a private association" comprised of the twenty-one county prosecutors. It asserted that its goal is to promote "the orderly administration of criminal justice within the State" and "the fair and effective enforcement" of New Jersey's Constitution and laws "through the cooperation of all law enforcement agencies." CPANJ further contended that even if it were to meet OPRA's definition of a public agency, the requested records would be exempt from disclosure on confidentiality grounds, as inter-agency advisory, consultative, or deliberative materials, or as records pertaining to a criminal investigation or related civil enforcement proceeding that are not "required by law to be made, maintained or kept on file." It took the position that it could not comply with the ACLU's OPRA request because it lacked "a physical office, location or even an online presence."

CPANJ also denied the ACLU's request for disclosure of the records pursuant to the common law right of access. Maintaining that the ACLU had failed to identify its interest in the request for purposes of the common law

6

balancing analysis, CPANJ contended in its response to the ACLU's request that it was not subject to the common law right of access and that the requested documents did not meet the common law definition of a public document.

B.

1.

The ACLU filed this action, alleging that CPANJ is a public agency under N.J.S.A. 47:1A-1.1 because it is "an instrumentality created by a combination of political subdivisions to facilitate cooperation between government agencies and other political subdivisions." The ACLU also asserted that the requested documents are public records subject to public access under the common law. It sought a declaratory judgment stating that CPANJ is subject to OPRA and the common law, and that CPANJ violated the law by rejecting the ACLU's request for documents. The ACLU also requested an injunction requiring production of the disputed documents, or, in the alternative, an in camera review of those documents followed by disclosure. It sought an award of attorneys' fees and costs.

CPANJ filed a motion to dismiss the complaint for failure to state a claim pursuant to Rule 4:6-2(e). It asserted that it is not a public agency under N.J.S.A. 47:1A-1.1 and is not subject to the common law right of access.

The trial court held that CPANJ is not a public agency within the meaning of N.J.S.A. 47:1A-1.1.  It rejected the ACLU's claim that because county prosecutors comprise CPANJ's membership, CPANJ cooperates with the Attorney General on certain law enforcement issues, and CPANJ is represented in the governing bodies of certain public organizations, it should be viewed as a public agency for purposes of OPRA.  The trial court found that CPANJ's amicus curiae appearances, which further the orderly administration of criminal justice, do not support the ACLU's contention that CPANJ is a public agency under OPRA.

The trial court also found that because CPANJ's records were not created under authority granted independently to each county prosecutor, they do not constitute public records for purposes of the common law right of access.  The court noted that although county prosecutors are invited to join CPANJ, they are not required to do so, and that membership in the organization is not mandated in order for prosecutors to fulfill their public function.

The trial court entered an order dismissing the complaint.

2.

The ACLU appealed the trial court's judgment.[1]  The Appellate Division granted amicus curiae status to Libertarians for Transparent Government.

The Appellate Division agreed with the trial court that CPANJ does not constitute a public agency as the Legislature defined the term in N.J.S.A. 47:1A-1.  ACLU, 474 N.J. Super. at 257-68.  The appellate court acknowledged that a county is a political subdivision of the State under OPRA, but rejected the contention that CPANJ was created by a combination of political subdivisions, given the absence of any evidence "that the counties directly created CPANJ or authorized its creation."  Id. at 261.  The Appellate Division recognized the distinction between a county and a county prosecutor, who is a constitutional officer and "the foremost representative of the executive branch of government in law enforcement in [the] county."  Id. at 262 (quoting Cherrits v. Ridgewood, 311 N.J. Super. 517, 528-29 (App. Div. 1998)).  The appellate court concluded that "any entity created by the county prosecutors is, at most, an instrumentality of instrumentalities or of offices," and that such an entity is not a public agency under OPRA.  Id. at 263-64.  The

---

[1]  The Appellate Division rejected a challenge by CPANJ to the court's jurisdiction to determine whether CPANJ is subject to OPRA.  474 N.J. Super. at 256 (citing Paff v. State Firemen's Ass'n, 431 N.J. Super. 278, 285-93 (App. Div. 2013)).  The jurisdictional question is not before us in this appeal.

9

Appellate Division accordingly affirmed the dismissal of the ACLU's OPRA claims.  Id. at 268.

The Appellate Division also concurred with the trial court's rejection of the ACLU's common law right of access argument but premised its decision on different grounds than those on which the trial court relied.  Id. at 268-72.  The appellate court noted that "a document cannot be a common [law] public record if it is not 'made by a public official in the exercise of . . . his public function.'"  Id. at 269 (quoting Keddie v. Rutgers, 148 N.J. 36, 49 (1997)).  Noting that the ACLU had proceeded against CPANJ, a nonprofit association, "not the Attorney General, an individual county prosecutor, a county prosecutor's office, nor any other governmental entity," the Appellate Division found that CPANJ is not a public entity and is therefore not subject to the common law right of access.  Id. at 269-70.  It affirmed the trial court's dismissal of the ACLU's common law claim.  Id. at 268-72.

### 3.

We granted the ACLU's petition for certification.  253 N.J. 396 (2023).  Libertarians for Transparent Government continued to participate as amicus before this Court, joined by the Association of Criminal Defense Lawyers of New Jersey.  We also granted leave to participate as amici to Salvation and Social Justice and to Youth Advocate Programs, Inc. (jointly represented), to

10

the Municipal Clerks' Association of New Jersey, Inc., and to the New Jersey State Association of Chiefs of Police.

## II.

### A.

The ACLU contends that CPANJ is a public agency under OPRA because it is an instrumentality of county prosecutors acting in a hybrid role as "state actors" and "political subdivisions of the state," and because CPANJ relies almost entirely on public resources to perform a governmental function. It argues that CPANJ is also a public entity for purposes of the common law right of access, given its public role in formulating criminal justice policy.

### B.

CPANJ asserts that the ACLU failed to allege facts supporting the claim that CPANJ is an instrumentality created by political subdivisions. It contends that its involvement in criminal justice policy and amicus curiae appearances do not render it a public agency as N.J.S.A. 47:1A-1.1 defines that term. CPANJ contends that the ACLU also failed to plead a factual basis for its claim under the common law right of access.

### C.

Amici curiae Libertarians for Transparent Government and the Association of Criminal Defense Lawyers of New Jersey agree with the ACLU

11

that CPANJ is a public agency under OPRA, and argue in the alternative that records that CPANJ provides to county prosecutors' offices may be obtained from those offices pursuant to OPRA.

## D.

Amici curiae Salvation and Social Justice and Youth Advocate Programs, Inc. assert that a holding that CPANJ is a public agency would further the objectives of OPRA and the common law right of access.

## E.

Amicus curiae the Municipal Clerks' Association of New Jersey, Inc. takes no position as to the specific dispute in this case but argues that private organizations with no direct nexus to political subdivisions should not, as a general matter, be subject to OPRA or to the common law right of access.

## F.

Amicus curiae New Jersey State Association of Chiefs of Police asserts that private entities are neither public agencies under OPRA nor public entities required to maintain public documents under the common law, if they are not instrumentalities of the State or its political subdivisions or formed under the direct supervision of the State or its political subdivisions.

III.

A.

We review de novo the trial court's grant of CPANJ's motion to dismiss for failure to state a claim pursuant to Rule 4:6-2(e). Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019). We apply the same standard that governs the trial court in that inquiry, affording to the ACLU "every reasonable inference of fact," and searching the complaint "in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). However, "if the complaint states no claim that supports relief, and discovery will not give rise to such a claim, the action should be dismissed." Dimitrakopoulos, 237 N.J. at 107; accord Banco Popular N. Am. v. Gandi, 184 N.J. 161, 166 (2005).

We review de novo a court's interpretation of OPRA, which constitutes a legal determination. In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 273-74 (2017).

In that inquiry, we apply familiar principles of statutory construction, striving "to effectuate the Legislature's intent." W.S. v. Hildreth, 252 N.J. 506, 518-19 (2023). "We ascribe to the statutory words their ordinary

13

meaning and significance and read them in context with related provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citation omitted). We resort to extrinsic evidence of the Legislature's intent only when the statute is ambiguous, or "leads to more than one plausible interpretation." Id. at 492-93. "When the plain language of a statute is clear and unambiguous, we apply the law as written." Hildreth, 252 N.J. at 518.

B.

Guided by those principles, we first determine whether the ACLU has pled factual allegations supporting a determination that CPANJ is a public agency subject to OPRA.

1.

In OPRA, "the Legislature declare[d] it to be the public policy of this State that government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest." N.J.S.A. 47:1A-1. "OPRA was 'designed to promote transparency in the operation of government.'" Firemen's Ass'n, 230 N.J. at 276 (quoting Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 541 (2012)). The Legislature sought "'to maximize public knowledge about public affairs in order to ensure an informed citizenry

and to minimize the evils inherent in a secluded process.'" Ibid. (quoting

Mason v. City of Hoboken, 196 N.J. 51, 64 (2008)).

Consistent with that legislative goal, OPRA applies only if the entity to

which a request is directed meets the statutory definition of a public agency.

N.J.S.A. 47:1A-1, -6; see also Fair Share Hous. Ctr., Inc. v. State League of

Muns., 207 N.J. 489, 501 (2011) ("Only if the League of Municipalities

qualifies as a 'public agency' that maintains 'government record[s]' under

OPRA must it then respond to the document requests made by Fair Share

Housing Center, Inc.") (alteration in original)).

For purposes of OPRA, the terms "public agency" or "agency" denote

> any of the principal departments in the Executive
> Branch of State Government, and any division, board,
> bureau, office, commission or other instrumentality
> within or created by such department; the Legislature
> of the State and any office, board, bureau or
> commission within or created by the Legislative
> Branch; and any independent State authority,
> commission, instrumentality or agency. The terms also
> mean any political subdivision of the State or
> combination of political subdivisions, and any division,
> board, bureau, office, commission or other
> instrumentality within or created by a political
> subdivision of the State or combination of political
> subdivisions, and any independent authority,
> commission, instrumentality or agency created by a
> political subdivision or combination of political
> subdivisions.
>
> [N.J.S.A. 47:1A-1.1.]

The Legislature intended that definition to be broad, in light of OPRA's "goal of making public records accessible and transparent." Sussex Commons, 210 N.J. at 544. The definition must "be construed in favor of the public's right of access." N.J.S.A. 47:1A-1.

The two sentences that comprise OPRA's definition of a public agency address "distinct categories of public agencies." Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 294 (2017). "The first sentence captures a group of public agencies in the Executive and Legislative Branches of State government, including subparts to and creations of the Executive and Legislative branches, as well as various types of independent state entities." Ibid. The second sentence "designates certain other entities as public entities subject to OPRA, specifically political subdivisions of the State and bodies sharing a basic connection to those political subdivisions." Ibid.

Two terms that appear in N.J.S.A. 47:1A-1.1, "political subdivision of the state" and "instrumentality," are directly relevant to this appeal.

As the Legislature directed, we afford the term "political subdivision of the State," undefined in OPRA, its "generally accepted meaning, according to the approved usage of the language." See N.J.S.A. 1:1-1.[2] The term "political

---

[2] The term "political subdivision" has been defined for purposes of other statutes not relevant to this case. See, e.g., N.J.S.A. 52:27D-145(b) (defining "political subdivision" as used in the Maintenance of Viable Neighborhoods

16

subdivision" denotes "a division of a state that exists primarily to discharge some function of local government." Black's Law Dictionary 1402 (11th ed. 2019). "A county or municipality is a political subdivision of the state, created as a convenient agency for the exercise of such of the governmental powers of the state as may be entrusted to it by the legislative authority[.]" Camden County v. Pennsauken Sewerage Auth., 15 N.J. 456, 470 (1954); see also Verry, 230 N.J. at 297 (noting that a municipality is a political subdivision of the State "and has long been understood as such") (citing City of Jersey City v. Martin, 126 N.J.L. 353, 361 (E. & A. 1941))); Headen v. Jersey City Bd. of Educ., 420 N.J. Super. 105, 115 (App. Div. 2011) ("We generally associate the term 'political subdivision' with a county, city, town, or municipality."), aff'd as modified, 212 N.J. 437 (2012).

As we noted in Verry, the Legislature has on several occasions enacted statutes "authorizing the formation of an entity by another form of legislatively created entity, like a municipality or a county, to be both 'a body corporate' and 'a political subdivision.'" 230 N.J. at 298. Those entities include county

---

Act of 1975, N.J.S.A. 52:27D-142 to -151, to denote "any unit or agency of government deriving its authority directly or indirectly from the State of New Jersey"); N.J.S.A. 27:5F-20(c) (defining "political subdivision" in the New Jersey Highway Traffic Safety Act of 1987, N.J.S.A. 27:5F-1 to -43, to denote "any local political subdivision of this State, including but not limited to a municipality, a county, a township, a district, or a special district").

or municipal parking authorities, N.J.S.A. 40:11A-4; beach erosion control districts, N.J.S.A. 40:68-40; port authorities, N.J.S.A. 40:68A-7; solid waste management authorities, N.J.S.A. 40:66A-38; environmental services authorities, N.J.S.A. 40:66A-7; sewerage authorities, N.J.S.A. 40:14A-7; and pollution control authorities, N.J.S.A. 40:37C-4(a). See Verry, 230 N.J. at 298 n.1.

The term "instrumentality," also undefined in OPRA, is "variously defined as '[a] thing used to achieve an end or purpose' and, alternatively, as '[a] means or agency through which a function of another entity is accomplished, such as a branch of a governing body.'" Fair Share Housing, 207 N.J. at 503 (alterations in original) (quoting Black's Law Dictionary 814 (8th ed. 2004)); accord Verry, 230 N.J. at 299.

In three decisions, this Court explored the meaning of the statutory terms at the heart of this appeal.

In Times of Trenton Pub. Corp. v. Lafayette Yard Community Development Corp., we concluded that defendant Lafayette Yard Community Development Corporation, a nonprofit corporation created to oversee a redevelopment project on donated property in the City of Trenton, was a public agency for purposes of OPRA. 183 N.J. 519, 534-36 (2005). Noting that Trenton's Mayor and City Council had "absolute control over the

18

membership" of the corporation's board of trustees and that the corporation "could only have been 'created' with their approval," we deemed the corporation to be "an 'instrumentality or agency created by a political subdivision' under N.J.S.A. 47:1A-1.1.'" Id. at 534-35.

In Fair Share Housing, we applied OPRA's definition of a public agency to the New Jersey State League of Municipalities, "a nonprofit, unincorporated association, today representing all of New Jersey's 566 municipalities." 207 N.J. at 494. Noting the League's role in promoting the municipalities' interests in the Legislature and in educating local officials, we concluded that the League "is achieving an end and providing a function on behalf of all 566 of New Jersey's municipalities." Id. at 503-04. Because each municipality constitutes a "political subdivision of the State" under N.J.S.A. 47:1A-1.1, and the League of Municipalities is an "instrumentality" under OPRA, we held that the League "is an 'instrumentality' of a 'combination of political subdivisions,'" and thus a public agency under OPRA. Id. at 504.

In Verry, we considered OPRA's applicability to two distinct entities: the Franklin Fire District No. 1, a fire district established pursuant to N.J.S.A. 40A:14-70, and the Millstone Valley Fire Department, a nonprofit volunteer fire department that was a member of the Fire District. 230 N.J. at 296-302.

19

We found in Verry that Franklin Fire District No. 1 constituted a public agency under N.J.S.A. 47:1A-1.1 because it was the "creation of a municipality," which in turn was "undoubtedly a political subdivision" that had exercised statutory authority to form the Fire District. Id. at 298-99. We therefore deemed the Fire District to be "an instrumentality of a political subdivision," thus satisfying "the definition of public agency under the second sentence of OPRA's definition." Id. at 299 (citing N.J.S.A. 47:1A-1.1).

We reached the opposite conclusion with respect to the volunteer fire department, however. Id. at 299-302. Noting that N.J.S.A. 40A:14-70.1 authorizes a fire district to create or contract with volunteer fire companies, we concluded that "a volunteer squad may be regarded as an instrumentality of a fire district." Id. at 300-01. We observed that

> because the District itself is not a political subdivision, but rather the instrumentality of one, the volunteer company is only the instrumentality of an instrumentality. Although OPRA provides that an instrumentality of a political subdivision constitutes a public agency, it does not provide that an instrumentality of an instrumentality constitutes a public agency. OPRA requires a direct connection to a political subdivision.
>
> [Id. at 301 (citing N.J.S.A. 47:1A-1.1).]

We also clarified language in our jurisprudence relying on "'creation' or 'governmental-function' tests when demarcating the boundaries of what

20

qualifies as a public agency." Id. at 302 (citing League of Muns., 207 N.J. at 507).  Observing that "such tests are useful only insomuch as they effectuate application of the statutory language," we reiterated that the plain language of N.J.S.A. 47:1A-1.1 established that the District, an instrumentality of a political subdivision, is a public agency subject to OPRA, and that the volunteer company, although supervised by the District, "is not a public agency as defined by OPRA."  Ibid.

2.

Guided by OPRA's plain language and our prior case law construing that language, and assuming the truth of the ACLU's factual allegations in accordance with Rule 4:6-2(e), we consider the ACLU's argument that CPANJ is a public agency as defined by N.J.S.A. 47:1A-1.1.[3]  We conduct a fact-sensitive inquiry, "look[ing] behind the technical form" of the entity at issue "to consider its substantive attributes."  Paff v. State Firemen's Ass'n, 431 N.J. Super. 278, 288 (App. Div. 2013).

---

[3]  The factual allegations that a court must assume to be true in a motion to dismiss under Rule 4:6-2 are the allegations set forth in the complaint.  See, e.g., Dimitrakopoulos, 237 N.J. at 107; Printing Mart, 16 N.J. at 746.  A party's factual assertions in a trial brief, in an appellate brief, or at oral argument, and the factual contentions of an amicus curiae, however, are not assumed to be true for purposes the court's inquiry.  See ibid.

The ACLU urges us to find that CPANJ is an instrumentality of the county prosecutors, "state actors" who together comprise a "combination of political subdivisions" under N.J.S.A. 47:1A-1.1. Accordingly, the core question in this appeal is whether a county prosecutor constitutes a "political subdivision" for purposes of OPRA.[4]

A county is indisputably a "political subdivision of the State" as defined in OPRA, N.J.S.A. 47:1A-1.1; accord Camden County, 15 N.J. at 470. The status of the counties themselves as political subdivisions under OPRA, however, has no bearing on the analysis. As the Appellate Division observed, "[n]othing in the record before us suggests that the counties directly created CPANJ or authorized its creation." ACLU, 474 N.J. Super. at 261. Indeed, the ACLU's complaint is devoid of any allegation that the counties themselves created CPANJ, or have ever controlled its operations. The ACLU's allegations center entirely on the county prosecutors' authority over CPANJ.

A county prosecutor is distinct from the county that the prosecutor serves for purposes of OPRA's reach. Our State Constitution provides that "[c]ounty prosecutors shall be nominated and appointed by the Governor with the advice and consent of the Senate," that the prosecutors' "term of office

---

[4] The parties agree that the county prosecutors themselves are subject to OPRA.

22

shall be five years," and that the prosecutors "shall serve until the appointment and qualification of their respective successors." N.J. Const. art. VII, § 2, ¶ 1. In accord with the constitutional provisions governing county prosecutors, the Legislature has determined that

> [t]here shall be appointed, for each county, by the governor with the advice and consent of the senate to serve for a term of 5 years and until the appointment and qualification of his successor, some fit person who shall have been admitted to the practice of law in this state for at least 5 years, who shall be known as the county prosecutor and who, except as otherwise provided by law, shall prosecute the pleas of the state in such county and shall have all of the powers and perform all of the duties formerly had and performed by the prosecutor of the pleas of such county. As the term of the prosecutor of the pleas of any county shall expire there shall be appointed in his place and stead such county prosecutor.
>
> [N.J.S.A. 2A:158-1.]

Accordingly, a county prosecutor, like the Attorney General, is a constitutional officer who serves by virtue of gubernatorial nomination and Senate confirmation. Morss v. Forbes, 24 N.J. 341, 369 (1957). "[C]ounty prosecutors occupy a 'hybrid' role, serving both the county and the State . . . ." Gramiccioni v. Dep't of Law & Pub. Safety, 243 N.J. 293, 310 (2020). Although a "county exercises considerable control over the fiscal operations of the county prosecutor's office," a county prosecutor's "'law enforcement function is unsupervised by county government or any other agency of local

23

government.'" Yurick v. State, 184 N.J. 70, 80 (2005) (quoting Wright v.

State, 169 N.J. 422, 452 (2001)). In short, the county prosecutor is not the

alter ego of the county itself, and does not constitute a "political subdivision"

as that term is used in N.J.S.A. 47:1A-1.1.

The ACLU's reliance on CPANJ's law enforcement functions and

relationship with the Attorney General is misplaced; because a prosecutor does

not meet the definition of a "political subdivision" under N.J.S.A. 47:1A-1.1's

plain language, CPANJ's role in law enforcement does not confer on it public

agency status for purposes of OPRA. See Verry, 230 N.J. at 302 (noting that

"creation" or "governmental-function" tests in determining public agency

status under N.J.S.A. 47:1A-1.1 are "useful only insomuch as they effectuate

application of the statutory language"). The ACLU does not allege facts

suggesting that CPANJ is a public agency in accordance with N.J.S.A. 47:1A-

1.1's plain language. The terms of the statute control.

Notwithstanding the contention of our dissenting colleagues, CPANJ has

not identified itself as the organizational shorthand of the county prosecutors;

to the contrary, it stresses the distinctions between itself and the county

prosecutors. See post at ___ (slip op. at 9-12). Those distinctions are

fundamental. A county prosecutor, a constitutional officer, is "statutorily

endowed with powers that arm him or her to perform wide ranging

24

duties." Yurick, 184 N.J. at 78-79 (citing Wright, 169 N.J. at 437). A prosecutor "shall be vested with the same powers and be subject to the same penalties, within his county, as the attorney general shall by law be vested with or subject to," and "shall use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws." N.J.S.A. 2A:158-5. CPANJ, in contrast, has no constitutional or statutory powers of any kind, and it is not authorized to investigate, arrest, or prosecute anyone. It constitutes an organization in which the county prosecutors are members. It is not the alter ego of the prosecutors themselves.[5]

We therefore concur with the Appellate Division that the ACLU's factual allegations do not support its assertion that CPANJ is a public agency within the meaning of N.J.S.A. 47:1A-1.1. The Appellate Division properly affirmed the dismissal of the ACLU's OPRA claim pursuant to Rule 4:6-2(e). Because the ACLU did not seek the documents from a public agency in

---

[5] Indeed, county prosecutors sometimes disagree with one another with respect to criminal justice issues. See, e.g., State v. Gomes, 253 N.J. 4, 12-14, 34 (2023) (noting that the county prosecutors in the two cases before the Court had taken opposing positions with respect to the question whether individuals who received conditional discharges for marijuana offenses prior to the Legislature's adoption of the Cannabis Regulatory, Enforcement Assistance, and Marketplace Modernization Act, N.J.S.A. 24:61-32 to -56, are statutorily ineligible for admission into the pretrial intervention program).

accordance with N.J.S.A. 47:1A-5 and -6, we do not reach the question whether the documents identified in its request constitute "government records" under OPRA as defined in N.J.S.A. 47:1A-1.1, or whether those documents are within one or more OPRA exemptions.

Our decision affirming the dismissal of the ACLU's OPRA claim against CPANJ does not preclude the ACLU from requesting the same categories of documents from one or more public agencies subject to OPRA.

### C.

We next consider the Appellate Division's decision affirming the trial court's dismissal of the ACLU's common law right of access claim.

### 1.

Long before the Legislature codified the right of access to certain public documents, we recognized "that citizens have [a] common law right 'to require custodians of public records to make them available for reasonable inspection and examination.'" Tarus v. Borough of Pine Hill, 189 N.J. 497, 507 (2007) (quoting Irval Realty Inc. v. Bd. of Pub. Util. Comm'rs, 61 N.J. 366, 372 (1972)). The common law determination raises an issue distinct from the statutory construction that governs our analysis of the ACLU's OPRA claim. "Although both paths raise similar considerations, OPRA does not limit the right of access to government records under the common law." Rivera v.

Union Cnty. Prosecutor's Off., 250 N.J. 124, 143 (2022) (citing <u>N. Jersey Media Grp., Inc. v. Township of Lyndhurst</u>, 229 N.J. 541, 578 (2017)); <u>see also</u> N.J.S.A. 47:1A-8 ("Nothing contained in [N.J.S.A. 47:1A-1 to -13] shall be construed as limiting the common law right of access to a government record, including criminal investigatory records of a law enforcement agency").

"To constitute a common law public record, an item must 'be a written memorial . . . made by a public officer, and . . . the officer [must] be authorized by law to make it.'" <u>Rivera</u>, 250 N.J. at 143-44 (alteration and omissions in original) (quoting <u>Nero v. Hyland</u>, 76 N.J. 213, 222 (1978)). A public record under the common law "is one that is made by a public official in the exercise of [the official's] public function, either because the record was required or directed by law to be made or kept, or because it was filed in a public office." <u>Keddie</u>, 148 N.J. at 49.

To access public documents under the common law, "requestors must make a greater showing than required under OPRA: (1) 'the person seeking access must "establish an interest in the subject matter of the material"'; and (2) 'the citizen's right to access "must be balanced against the State's interest in preventing disclosure."'" <u>Mason</u>, 196 N.J. at 67-68 (quoting <u>Keddie</u>, 148 N.J. at 50)). We have identified factors to guide that determination. <u>See</u>

Rivera, 229 N.J. at 144-49 (identifying factors addressing a common-law request for police internal affairs materials); Loigman v. Kimmelman, 102 N.J. 98, 113 (1986) (setting forth factors for consideration in the balancing test).

2.

As the Appellate Division noted, "[t]he status of the party from whom documents are requested is a threshold issue under the common law right of access." ACLU, 474 N.J. Super. at 269. In factual allegations that we assume to be true for purposes of CPANJ's motion to dismiss under Rule 4:6-2(e), the ACLU asserts that CPANJ identifies itself in its disclosure forms as a nonprofit, tax-exempt, unstaffed organization with a governing body comprised of seven voting members. The ACLU identifies no statute, regulation, or other mandate requiring CPANJ to create or maintain the documents in dispute. It suggests no statutory or regulatory mandates of any kind addressing the records at issue. The ACLU does not allege that CPANJ maintains public documents in a public office; indeed, it does not dispute CPANJ's assertion that it maintains no office at all. The ACLU identifies no precedential decision discussing, let alone upholding, a request for public documents served on a private entity such as CPANJ. In short, the ACLU asserts no factual allegations that would suggest that CPANJ constitutes an

28

entity upon which a common law right of access request for documents may properly be served.

We agree with the Appellate Division's conclusion that "CPANJ is not a public entity subject to the common law right of access" and that it accordingly "was not required to provide the requested documents" to the ACLU. Id. at 271. We concur with the appellate court's determination that the trial court properly dismissed the ACLU's common law claims.

We do not reach the question whether the documents that the ACLU requested from CPANJ would be considered common law public documents if requested from a public entity subject to the common law right of access.[6] Nor do we conduct the balancing test required if a public entity disputes a common law request for access to public documents. If the ACLU serves a request for the documents at issue in this appeal on one or more public entities subject to the common law right of access, and that request is denied, the ACLU may assert a claim against that entity under the common law.

---

[6] Our dissenting colleagues state that any CPANJ documents stored at the county prosecutors' offices constitute common law public records. Post at ___ (slip op. at 2, 19). If the prosecutors' offices have CPANJ-related documents that are subject to the common law right of access, the ACLU can request those documents from the public entities that have them -- the prosecutors' offices.

IV.

The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER and JUSTICES SOLOMON, PIERRE-LOUIS, and FASCIALE join in JUSTICE PATTERSON's opinion.  JUSTICE WAINER APTER filed a dissent, in which JUSTICE NORIEGA joins.

American Civil Liberties
Union of New Jersey,

Plaintiff-Appellant,

v.

County Prosecutors
Association of New Jersey,

Defendant-Respondent.

JUSTICE WAINER APTER, dissenting.

According to the facts alleged in the American Civil Liberties Union of New Jersey's (ACLU) complaint and submitted by the County Prosecutors Association of New Jersey (CPANJ), CPANJ consists only of the 21 sitting county prosecutors. CPANJ has no staff; its work is completed by the county prosecutors themselves, or by employees of the county prosecutors' offices across the state, including assistant prosecutors. It has no office; its documents are maintained in the county prosecutors' offices. And CPANJ receives no private funding; it is funded only through government funding sources.

Taken in the light most favorable to the ACLU, as we must on a motion to dismiss under Rule 4:6-2(e), those facts at least suggest that CPANJ is simply another name for the county prosecutors themselves and that it

therefore meets the definition of "public agency" in N.J.S.A. 47:1A-1.1 in the same way that the county prosecutors' offices themselves do.

Looking behind CPANJ's technical form, and construing the Open Public Records Act (OPRA) "in favor of the public's right of access," N.J.S.A. 47:1A-1, I would hold that the trial court erred in granting CPANJ's motion to dismiss Count One of the ACLU's complaint pursuant to Rule 4:6-2(e).

In addition, even if the majority were correct on the ACLU's OPRA count, the records the ACLU requested from CPANJ are common-law public documents. Because no private citizens are members of CPANJ, every document recorded, generated, or produced by CPANJ is recorded, generated, or produced by a public official. And CPANJ itself says that it was created to promote "the orderly administration of criminal justice within the State and the fair and effective enforcement of the constitution and laws of this State" -- a governmental purpose of the highest order.

In any event, CPANJ conceded that it has no physical office, and it maintains all documents in the county prosecutors' offices. The county prosecutors' offices are public offices under the common law. Any CPANJ documents stored at the county prosecutors' offices are by definition common law public records. I would therefore hold that the trial court also erred in dismissing Count Two of the ACLU's complaint.

2

For those reasons, I respectfully dissent.

I.

All agree that the county prosecutors themselves are "public agenc[ies]" subject to OPRA. Ante at ___ (slip op. at 21 n.3). Indeed, in many cases this Court has assumed that county prosecutors and county prosecutors' offices fall under N.J.S.A. 47:1A-1.1's definition of "public agency" and has simply considered whether a specific OPRA exemption nonetheless shielded the records in question from access. See, e.g., Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 136-37, 141 (2022) (accepting, without discussion, that the Union County Prosecutor's Office is a "public agency" under N.J.S.A. 47:1A-1.1 and considering whether the internal affairs reports at issue were exempt from disclosure as a "personnel and/or internal affairs record"); Brennan v. Bergen Cnty. Prosecutor's Off., 233 N.J. 330, 332-33 (2018) (accepting, without discussion, that the Bergen County Prosecutor's Office is a "public agency" under N.J.S.A. 47:1A-1.1 and considering whether successful bidders at a public auction of government property had a reasonable expectation that their names and addresses would remain private); Paff v. Ocean Cnty. Prosecutor's Off., 235 N.J. 1, 17-24 (2018) (accepting, without discussion, that the Ocean County Prosecutor's Office is a "public agency" under N.J.S.A.

3

47:1A-1.1 and considering whether the mobile video recordings at issue were exempt as "criminal investigatory records").

This makes sense, as county prosecutors are constitutional officers, "appointed by the Governor with the advice and consent of the Senate." Ante at ___ (slip op. at 22) (quoting N.J. Const. art. VII, § 2, ¶ 1); see also ante at ___ (slip op. at 22-23) (quoting N.J.S.A. 2A:158-1).

There is also no dispute that the purpose of OPRA is "that government records[1] shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest." Ante at ___ (slip op. at 14) (quoting N.J.S.A. 47:1A-1). In light of OPRA's vital "goal of making public records accessible and transparent," the majority agrees that the Legislature intended N.J.S.A. 47:1A-1's definition of "public agency" to be broad. Ante at ___ (slip op. at 16) (quoting Sussex Commons Assocs., LLC v. Rutgers, 210 N.J. 531, 544 (2012), and N.J.S.A. 47:1A-1).

---

[1] Government records are defined broadly to include "any paper . . . that has been made, maintained or kept on file in the course of his . . . official business by any officer . . . of the State or of any political subdivision thereof . . . or that has been received in the course of his . . . official business by any such officer." N.J.S.A. 47:1A-1.1.

4

It could hardly contend otherwise, as this Court has repeatedly recognized both OPRA's important public purpose and its corresponding breadth.

In Fair Share Housing Center, Inc. v. State League of Municipalities, we acknowledged the key role that OPRA's access to government records plays in a vibrant democracy: "Those who enacted OPRA understood that knowledge is power in a democracy, and that without access to information contained in records maintained by public agencies citizens cannot monitor the operation of our government or hold public officials accountable for their actions." 207 N.J. 489, 502 (2011). In Times of Trenton Publishing Corp. v. Lafayette Yard Community Development Corp., we detailed OPRA's purpose: "to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process." 183 N.J. 519, 535 (2005) (quoting Asbury Park Press v. Ocean Cnty. Prosecutor's Off., 374 N.J. Super. 312, 329 (Law Div. 2004)). And in Sussex Commons Associates, LLC v. Rutgers, we discussed how OPRA "seeks to promote the public interest" and "serve[s] as a check on government action" "by granting citizens access to documents that record the workings of government." 210 N.J. 531, 546 (2012); see also Rivera, 250 N.J. at 141 ("[W]ithout access to government records, even the most engaged members of the public 'cannot monitor the

5

operation of our government or hold public officials accountable.'" (quoting Fair Share, 207 N.J. at 502)).

As to OPRA's expansive scope, we have stated that it stems from the statute's prescription that "any limitations . . . shall be construed in favor of the public's right of access." Fair Share, 207 N.J. at 501 (quoting N.J.S.A. 47:1A-1). Therefore, under OPRA, "'all government records shall be subject to public access unless'" they "fit within an enumerated exception." Ibid. (emphasis added) (quoting N.J.S.A. 47:1A-1).

Finally, the majority correctly notes that in determining whether an entity is a "public agency" under N.J.S.A. 47:1A-1.1's "broad" definition, we "conduct a fact-sensitive inquiry, 'look[ing] behind the technical form' of the entity at issue 'to consider its substantive attributes.'" Ante at ___ (slip op. at 21) (quoting Paff v. State Firemen's Ass'n, 431 N.J. Super. 278, 288 (App. Div. 2013)).

Looking behind CPANJ's technical form, and construing "any limitations . . . in favor of the public's right of access," N.J.S.A. 47:1A-1, I would hold that CPANJ is a "public agency" under OPRA in the same way that county prosecutors' offices are, because the ACLU alleges it is simply another name for the county prosecutors themselves.

6

That conclusion flows from the allegations in the ACLU's complaint and information submitted by CPANJ.  See AC Ocean Walk, LLC v. Am. Guar. & Liab. Ins. Co., 256 N.J. 294, 310-11 (2024) ("In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'"  (quoting Myska v. N.J. Mfrs. Ins. Co., 440 N.J. Super. 458, 482 (App. Div. 2015))); Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (in deciding a motion to dismiss, we afford plaintiff "every reasonable inference of fact," and "'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary'" (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957))); see also ante at ___ (slip op. at 13) (referencing the Printing Mart standard).

In its complaint, the ACLU alleges that CPANJ consists of only the 21 county prosecutors themselves.  Indeed, despite being classified as "volunteers" on CPANJ tax forms, the ACLU explains that "all officers, trustees, and members of CPANJ" are actually "New Jersey county prosecutors, appointed by the Governor and paid by the State of New Jersey."  Because CPANJ does not compensate any staff or have any offices, the

7

"County Prosecutors use the resources of their offices," including Assistant Prosecutors, detectives, clerical staff, computers, email addresses, and more, "to conduct CPANJ business." "Put simply . . . CPANJ is operated entirely by government appointees who are paid with New Jersey taxpayer funds to perform legal duties on behalf of the State of New Jersey while using government resources to do so."

CPANJ acknowledges this. In its responsive letter to the ACLU dated September 18, 2019, then-CPANJ President, the Sussex County Prosecutor, stated that CPANJ is "comprised of the 21 County Prosecutors," and "does not have a physical office, location, or even an online presence."

At oral argument, counsel for CPANJ agreed that only sitting county prosecutors can participate in CPANJ -- once a county prosecutor has resigned or been removed, that individual can no longer participate. He also stated that because CPANJ has no physical office, it maintains all documents in the county prosecutors' offices. And he conceded that CPANJ is funded only through government resources (i.e., county prosecutors' office resources) -- there are no private sources of funding.

In their briefing and at argument, the ACLU and amici Libertarians for Transparent Government and the Association of Criminal Defense Lawyers (together, LFTG) likewise assert that: (1) no private citizens are members of

8

CPANJ; (2) CPANJ funding appears to be derived entirely from county prosecutors' offices; and (3) CPANJ has no office, no email address, and no staff of its own, and relies solely on government staff and government resources, including email addresses, funds, and computers, to complete all of CPANJ's work.[2] In other words, "the overlap" between the county prosecutors' offices and CPANJ "is complete," and CPANJ is simply "organizational shorthand for the twenty-one county prosecutor's offices."

The majority states that CPANJ is a "private entity." Ante at ___ (slip op. at 28). But based on their actions, the county prosecutors see CPANJ as "organizational shorthand" for themselves and their offices, not as any separate private entity.

The relevant statutes prove the point. Pursuant to N.J.S.A. 2A:158-1.1, "[a]ny person appointed to the office of county prosecutor" must "serve on a full-time basis" and "shall not engage in the practice of law or other gainful employment." Similarly, assistant prosecutors may never engage in "outside employment" that involves "the private practice of law or the provision of other legal services." N.J.S.A. 2A:158-15.1b. Yet the county prosecutors and

---

[2] It is appropriate to consider the assertions set forth by the ACLU and their amici in briefing and at oral argument because the ACLU has not yet had an opportunity to amend its complaint, and leave to amend is to be freely granted. See Printing Mart, 116 N.J. at 746.

assistant prosecutors regularly represent CPANJ in court, demonstrating that they view CPANJ as the voice of the county prosecutors speaking together, not as a private organization.

In this case, an Assistant Prosecutor from the Mercer County Prosecutor's Office represented CPANJ before the trial court and the Appellate Division, using his county prosecutor's office email address and resources to do so.

In In re Request to Release Certain Pretrial Detainees, CPANJ participated before this Court as a "party in interest," urging the Court not to compel the release of pretrial detainees in response to COVID-19.  See 245 N.J. 218 (2021).  CPANJ was represented by the then-President of CPANJ, the Hudson County Prosecutor, and Assistant Prosecutors from the Morris County Prosecutor's Office, Warren County Prosecutor's Office, and Somerset County Prosecutor's Office.  Accompanying the brief was a certification from the First Assistant Prosecutor for the Warren County Prosecutor's Office explaining that he had been tasked by CPANJ with authoring a portion of the brief and had obtained data on COVID-19 from representatives of CPANJ, i.e., staff from other county prosecutors' offices.

LFTG provided a list of 29 published decisions of this Court for which CPANJ participated as amicus curiae and was represented by assistant

10

prosecutors, dating back to 1986. And there are additional cases as well. For example, in State v. Higginbotham, which is pending, CPANJ submitted an amicus curiae brief to this Court defending the constitutionality of amendments to the child endangerment statute, N.J.S.A. 2C:24-4. Listed as counsel for CPANJ on the brief were then-President of CPANJ, the Cape May County Prosecutor, and Assistant Prosecutors from the Mercer County Prosecutor's Office, Somerset County Prosecutor's Office, Bergen County Prosecutor's Office, and Cape May County Prosecutor's Office.

The county prosecutors thus see CPANJ as a convenient way to make their collective views known to this Court -- when they agree, rather than submit 21 amicus briefs, they submit one joint brief. In a certification in support of CPANJ's motion to appear as amicus curiae in State v. Smart, 253 N.J. 156 (2023), to defend the constitutionality of a particular search and seizure, an Acting Assistant Prosecutor from the Monmouth County Prosecutor's Office explained why: "CPANJ is an organization whose membership is comprised of the 21 county prosecutor's offices in New Jersey," and it "serves to represent the interests of the assistant prosecutors employed in the diverse prosecutor's offices around the State."

All of this points to CPANJ being indivisible from the county prosecutors' offices themselves.

11

CPANJ conceded that the offices of the county prosecutors are public agencies under OPRA. If county prosecutors' offices are public agencies under OPRA, and CPANJ is the county prosecutors' offices by another name, then CPANJ should likewise be a public agency subject to OPRA's requirements. I would therefore hold that the ACLU has asserted sufficient facts to at least suggest that CPANJ is mere shorthand for New Jersey's county prosecutors' offices, and meets the definition of "public agency" in N.J.S.A. 47:1A-1.1 in the same way that they do.

At the very least, the ACLU should have been entitled to discovery of information uniquely in CPANJ's possession that is relevant to whether it meets the definition of public agency under N.J.S.A. 47:1A-1.1. CPANJ possesses the facts that establish whether it and the county prosecutors' offices are actually one and the same, and yet it moved to dismiss this case without disclosing that information. The Court should not countenance such an approach. Cf. Cardali v. Cardali, 255 N.J. 85, 110-11 (2023) (one party cannot be required to put forth information solely in the other party's possession without first having the opportunity to obtain that information through discovery).

We have previously endorsed OPRA's "underlying premise . . . that society as a whole suffers when 'governmental bodies are permitted to operate

12

in secrecy.'" Fair Share, 207 N.J. at 502 (quoting Asbury Park Press, 374 N.J. Super. at 329). Public officials should not be permitted to hide behind organizational forms to utilize government resources to carry out government business in secrecy. This means that county prosecutors' offices should not be permitted to escape OPRA by labeling certain of their activities as occurring on behalf of CPANJ, rather than themselves, when the ACLU alleges that there is no functional difference between the two.

I would hold the trial court erred in granting CPANJ's motion to dismiss the ACLU's complaint pursuant to Rule 4:6-2(e). In my view, the court should have either granted discovery on whether CPANJ is a "public agency" under N.J.S.A. 47:1A-1.1, or considered CPANJ's argument that the documents in question were exempt from OPRA for various reasons. I therefore dissent from the majority's affirmance of the dismissal of Count One of the ACLU's complaint at this stage.

## II.

Even if the majority were correct that the ACLU did not allege sufficient facts that CPANJ meets the definition of "public agency" in N.J.S.A. 47:1A-1.1 to survive a motion to dismiss, I would nonetheless hold that the ACLU sufficiently alleged that the records it requested from CPANJ are common-law

public records. I therefore separately dissent from the majority's affirmance of the dismissal of Count Two of the ACLU's complaint.

As the majority correctly explains, "OPRA does not limit the right of access to government records under the common law." Ante at ___ (slip op. at 25) (quoting Rivera, 250 N.J. at 143). The majority also acknowledges that "[t]he definition of a public record under the common law is broader than under OPRA." Rivera, 250 N.J. at 143.

A common law public record "is one that is made by a public official in the exercise of [the official's] public function, either because the record was required or directed by law to be made or kept, or because it was filed in a public office." Ante at ___ (slip op. at 27) (emphasis added) (quoting Keddie v. Rutgers, 148 N.J. 36, 49 (1997)). The majority concludes that the requested documents are not common law public records because "[t]he ACLU identifies no statute, regulation, or other mandate requiring CPANJ to create or maintain the documents in dispute," and because "[t]he ACLU does not allege that CPANJ maintains public documents in a public office." Ante at ___ (slip op. at 28). The first is not required; the second is incorrect.

As an initial matter, "written memorials made by public officers in the exercise of public functions are common-law public records" "even if they are not" "required by law to be made, maintained or kept on file." Loigman v.

Kimmelman, 102 N.J. 98, 102 (1986) (citations and internal quotation marks omitted); Shuttleworth v. City of Camden, 258 N.J. Super. 573, 582-83 (App. Div. 1992) (quoting N.J.S.A. 47:1A-2).  Common law public records thus "include almost every document recorded, generated, or produced by public officials."  Shuttleworth, 258 N.J. Super. at 582 (emphasis added).

The documents the ACLU requested were written by public officers exercising public functions.

As earlier noted, CPANJ concedes that it consists of only the 21 sitting county prosecutors.  It concedes that it has no private citizens as members, and no paid staff.  Therefore, every document recorded, generated, or produced by CPANJ must be recorded, generated, or produced by a public official; there is simply no one other than public officials that can perform CPANJ work.

CPANJ disputes that the county prosecutors and their staff are exercising any governmental function when acting on behalf of CPANJ.  At oral argument, counsel for CPANJ suggested that a county prosecutor's participation in CPANJ is similar to that prosecutor serving on their town's "little league board."  That is false.  One must go no further than CPANJ's own words, and the statutes enacted by the Legislature, to see why.

15

First, in its tax returns, CPANJ does not describe itself as a volunteer organization with social, professional, or athletic aims. It describes itself as an organization created to

> maintain close cooperation between the Attorney General of the State of New Jersey, the Division of Criminal Justice of the State of New Jersey and the twenty-one (21) county prosecutors of the State of New Jersey relative to . . . developing educational programs so as to promote the orderly administration of criminal justice within the State of New Jersey, consistent with the Constitution and the laws of the State of New Jersey.

Similarly, in its September 18, 2019 response to the ACLU, CPANJ stated that its goal is "the promotion of the orderly administration of criminal justice within the State and the fair and effective enforcement of the constitution and laws of this State through the cooperation of all law enforcement agencies."

The promotion of the orderly administration of criminal justice within the State, and the fair and effective enforcement of our criminal laws and our constitution, is a governmental function of the highest order. How do we know? Because the Legislature has declared it to be.

In 1970, the Legislature declared it

> the public policy of this State to encourage cooperation among law enforcement officers and to provide for the general supervision of criminal justice by the Attorney General as chief law enforcement officer of the State, in order to secure the benefits of a uniform and efficient

16

enforcement of the criminal law and the administration of criminal justice throughout the State.

[N.J.S.A. 52:17B-98.]

But the Legislature did not simply leave the "administration of criminal justice throughout the State" to the Attorney General. Instead, it statutorily mandated that the county prosecutors "cooperate with and aid the Attorney General" in this vital work. N.J.S.A. 52:17B-112(a). In order to facilitate that aid and cooperation, it also provided that "[t]he Attorney General may, from time to time, and as often as may be required, call into conference the county prosecutors, . . . for the purpose of discussing the duties of their respective offices with a view to the adequate and uniform enforcement of the criminal laws of this State." Id. at (c).

According to the ACLU, that is exactly what CPANJ does: provides a convenient way for all 21 county prosecutors to cooperate with and aid the Attorney General in the performance of his official duties regarding the fair and effective enforcement of the criminal law of this State. That is true when CPANJ submits amicus briefs to this court defending the constitutionality of a criminal statute, see State v. Higginbotham, or a particular search and seizure, see State v. Smart. It is true when CPANJ weighs in on the possible release of pretrial detainees in response to COVID-19. See In re Request to Release Certain Pretrial Detainees.

17

And, the ACLU alleges, it is true when CPANJ meets with the Attorney General to discuss the uniform and effective enforcement of this State's criminal laws. In its complaint, the ACLU alleges that CPANJ "regularly meets with representatives of the Attorney General of New Jersey at the Hughes Justice Complex in Trenton, New Jersey and is treated by the Office of the Attorney General . . . as a partner in implementing statewide criminal justice policy." The Appellate Division similarly stated that "CPANJ's monthly meetings are a convenient forum for the Attorney General to meet with the county prosecutors. Such meetings could be convened, of course, without the existence of CPANJ." ACLU of N.J. v. Cnty. Prosecutors Ass'n of N.J., 474 N.J. Super. 243, 267 (App. Div. 2022).

Therefore, CPANJ's documents are written by public officers exercising public functions.

However, even if county prosecutors and their staff were somehow not exercising public functions when acting on behalf of CPANJ, CPANJ records would still meet the definition of common law public records. This is so because any document "filed in a public office" is a common law public record. Keddie, 148 N.J. at 49.

In Keddie, a Rutgers professor sought information from Rutgers about work that private attorneys performed on civil rights claims and other matters.

18

Id. at 41. The professor specifically requested bills that the private attorneys submitted to Rutgers for payment. Ibid. This Court held that the private attorneys' bills were common law public records because they were "writings filed in a public office," i.e., writings filed at Rutgers. Id. at 50.

Here, again, CPANJ has conceded that it has no physical office, and it maintains any and all documents that it has in the county prosecutors' offices. The county prosecutors' offices are, without question, public offices under the common law. Therefore, any CPANJ documents stored at the county prosecutors' offices are common law public records.

Because CPANJ documents are common law public records, the trial court should have assessed whether the ACLU "establish[ed] an interest in the subject matter of the material" and then should have balanced the ACLU's "right to access" the materials against CPANJ's "interest in preventing disclosure." Mason v. City of Hoboken, 196 N.J. 51, 67-68 (2008). It did not. For this independent reason, I dissent from the majority's affirmance of the dismissal of Count Two of the ACLU's complaint.

### III.

For the foregoing reasons, I respectfully dissent.

19